## The People *against* Clarke.

To an action by the people for the repeal of royal letters patent dated in 1737, granting land in the province of New-York, on the ground that the patent was obtained by fraud discovered since the issuing thereof, and also on the ground of breach of conditions by the grantees, the statute of limitations of 1788, ch. 43, reënacted in the revision of 1801, ch. 189, is applicable.

In such an action the defendant is entitled to costs if he prevails; and an extra allowance may be made on sufficient facts shown.

Complaint under the Code, filed by L. S. Chatfield, attorney-general, on the 31st day of October, 1849. The relief sought was the repeal of certain letters patent, dated November 19, 1737, in the reign of George II., under the great seal of the province of New-York, tested in the name of and signed by George Clarke, lieutenant-governor, for twenty-five thousand four hundred acres of land in Albany county, southward of the Mohawk river and westward of Schoharie river, to William Corry and twelve other persons, their heirs and assigns. This grant was subject to the payment of two shillings and sixpence for every hundred acres of land, and conditioned that a certain portion should be put under cultivation in three years, and that a certain number of settlers should be established upon the tract in seven years from the date of the grant.

The complaint sets out the petition of William Corry to the lieutenant-governor, for the grant of one hundred thousand acres of land; the proceedings of the colonial council

upon whose advice and consent the lieutenant-governor was intrusted with the power of granting crown lands, whereby they advised and consented to the grant; and that a warrant of survey was thereupon issued to the lieutenant-governor, surveyor-general and receiver-general, as commissioners for setting out all lands to be granted in the province; that they reported a survey of the tract described in the patent, and that thereupon the lieutenant-governor issued the patent. It alleges that the patent was procured by fraud, which the plaintiffs have discovered since the issuing of the patent, viz., that the patentees, except Corry, were trustees for Corry and for the lieutenant-governor himself, and that they, soon after the patent was granted, released to Corry; that by an agreement between Corry and Clarke, the lieutenant-governor, made before the patent was issued, the latter was to be at half the expense of surveying the lands and obtaining the patent, and to have one-half of the lands, and that Corry released such half to Clarke; that certain representations contained in the petition of Corry, to the effect that he had made arrangements with Irish emigrants to come out and settle the lands, were false and fraudulent; that the patentees, except Corry, had no interest in or intention to settle the lands, and their names were fraudulently used; that the interest of Clarke was fraudulently concealed from the members of the council, and that it was by these fraudulent means that the council were induced to concur in the grant; all which proceedings, it is averred, were a fraudulent device on the part of Corry and Clarke to procure the grant, and to evade certain restrictions which forbade the granting of more than two thousand acres of crown land to one person. The order of the council and the report of the commissioners, as set forth in the complaint, both state that the twelve patentees, except Corry, were persons named and appointed by Corry as trustees for his use. The complaint states that the plaintiffs have recovered possession of Corry's half of the

patented land, and that the defendant Clarke, a descendant of the lieutenant-governor, possesses and claims to own the part which Corry released to his ancestor, the said lieutenant-governor, and is tenant of a part of said lands. The prayer is, " that unless the defendant shall show good cause to the contrary, the letters patent may, by reason of the premises, be adjudged to have been and to be void, and be vacated and annulled, and the record canceled, with costs of suit."

The defendant put in an answer denying in detail and specifically the material matters stated in the complaint, and showing title in himself by deeds and devises under the lieutenant-governor for one-half of the lands, the immediate title of the defendant being a devise from his father; and he also set up the statute of limitations, as follows : " That no right or title to the twelve thousand seven hundred acres, devised to the defendant as aforesaid, or any part thereof, has accrued to the plaintiffs within the space of forty years before the commencement of this suit; and that neither the plaintiffs, nor those under whom they claim, have received the rents or profits of said land or of any part thereof within the said space of forty years, and that no verdict, judgment or decree whatever in any court of record, or in any other court, has been given for said land or any part thereof in favor of the said plaintiffs, or of any patentee or grantee of the said plaintiffs, his heirs or assigns, within the space of forty years, but on the contrary, the defendant avers that during the whole of said space of forty years before the commencement of this suit, and ever since, the defendant and his father (under whose will the defendant claims title), and those deriving title from the defendant, have respectively been in the uninterrupted, exclusive and actual possession and enjoyment of said lands, and have received the rents, issues and profits thereof, claiming in good faith to own and be seized of the said lands, and all the hereditaments thereunto belonging, in fee, adversely to

the said plaintiffs and to every person whatever." The defendant also set up the payment and commutation of the quit-rents under an act of the legislature, and certain other matters not material to be stated.

The attorney-general replied to the matters set up in the answer, except the defence of the statute of limitations, and to that part he demurred, on the ground that the matters set up did not constitute a defence to the matters alleged in the complaint.

The issue of law thus joined was argued at a special term in Montgomery county, in December, 1850, before Mr. Justice CADY, who ordered judgment for the defendant (10 *Barb.*, 120), and this judgment was affirmed by the general term of the fourth district, and an order was made for an extra allowance of expenses to the amount of $1100. (11 *Barb.*, 337.) Judgment for the defendant was perfected. The people appealed to this court.

*John Van Buren* for the appellants.

I. The people of the State of New-York succeeded by the revolution to all the rights of the crown of Great Britain which are consistent with our form of government, and the patent sought to be vacated derives all its validity from them. They being the owners of all the lands within their territorial limits which have not been legally granted, and all such lands being held from them as the sovereign, they have the unquestionable right to institute legal proceedings to test the validity of grants within the state made by the crown of Great Britain. (*Wendell* v. *The People*, 8 *Wend.*, 183; 1 *R. S.*, 718, § 1.) 1. The provisions of the Code (§ 433) authorize the proceedings instituted in this case. 2. Independent of § 433, the people have the right which the crown possessed, to institute this equitable proceeding to vacate these letters patent. (*Attorney-General* v. *Vernon*, 1 *Vern.*, 277, 383; 2 *R. S.*, 578, § 12; 3 *id.*, 693,

The People *against* Clarke.

*2d ed.;  3 id.,* 787, *2d ed., Rev. Notes;* 10 *John.,* 23; 12 *id.,* 77; 1 *Greenl. Laws,* 61, § 14.)

II. The answer demurred to sets forth no legal defence to the action. 1. It sets up an adverse possession, which cannot be had or taken against the people. (3 *Bl. Com.,* 257; *Comyn's Dig., Prerogative, D,* 71; *Bac. Abr., Prerogative, E,* 6; *Co. Lit.,* 277; *Jackson* v. *Winslow,* 2 *John.,* 83; *Owen* v. *Lucas,* 1 *Brevard,* 519; *Wright* v. *Swan,* 6 *Porter,* 84; *Childs* v. *Clark,* 4 *Bibb,* 554; *Horlock* v. *Jackson,* 3 *Brev.,* 254; *Jackson* v. *Gumaer,* 2 *Cow.,* 552; *Hill* v. *Dyer,* 3 *Greenl.,* 441; *Stokes* v. *Dawes,* 4 *Mason,* 268; *The People* v. *Arnold,* 4 *Comst.,* 508.) 2. No adverse possession of the lands covered by this patent can be a defence to a proceeding instituted simply to vacate the letters patent. The allegations made in the answer to show such possession are obviously inapplicable as an answer to the facts stated in the complaint. 3. There is no statute of limitations which bars the proceedings instituted in this case. (*Bledsoe* v. *Doe ex dem. Little,* 4 *How., Miss.,* 13; *United States* v. *Hoar,* 2 *Mason,* 311; *Angell on Lim.,* 369, 370, 371.) The 75th section of the Code, which was relied on, does not affect this proceeding. (1.) The words are, "The people *will* not sue." This is not a prohibition. (2.) This is not a suit; the words "suit" and "action" have always been confined to proceedings at law. Until the Revised Statutes there was no statute limiting the time for commencing proceedings in equity, where the case was one of exclusive equitable jurisdiction, and that provision did not apply to the people. (3 *R. S.,* 705, *ch.* 2.) (3.) This is not a suit "for or in respect to any real property, or the issues or profits thereof." It is a bill to vacate the letters patent. It neither claims nor recovers the lands, or the rents, issues or profits thereof. (4.) The 77th section of the Code shows that the 75th section does not bar this proceeding. An argument to sustain a defence under the 75th section must go the length of holding that forty years' possession of land under a void

patent bars all proceedings by the people to recover it. Yet the 77th section gives a right of action twenty years after the patent conveying it is declared void, which may be after a possession of sixty years or more.

*Richard Cooper* and *N. Hill, Jr.*, for the respondent.

I. The plaintiffs never had any title to the lands mentioned .in the complaint; and for more than forty years before the commencement of the action the defendant and those under whom he claims had been in the exclusive possession, taking the rents and profits, and claiming to hold adversely to the plaintiffs and every person whatever; therefore the action is barred by the statutes of limitation of 1788 and 1801. (*The People* v. *Arnold*, 4 *Comst.*, 508.) 1. The first part of § 1 of the statute of 1788 (2 *Jones & Varick's Laws of N. Y.*, 260) bars the remedy of the people. 2. The next division of the same section transfers any rights they might have, by declaring that all persons shall quietly and freely have, hold and enjoy, &c., as against the people. A similar provision in the statute of James I. is said by Lord COKE to establish the "state of the subject." (3 *Inst.*, 189, 190.) 3. It lastly establishes the right of the citizen as against the grantees of the people claiming by virtue of letters patent made on suggestion of concealment, &c., when no verdict, judgment or decree shall have been rendered as therein stated. This part of the statute has no application to a suit brought by the people themselves. A similar provision in the statute of James, Lord COKE says, was intended to "secure the *subject* against the *subject*." (3 *Inst.*, 190.) For what is meant by grants made on suggestion of concealment, or wrongful detaining, or defective title, *see* 3 *Inst.*, 189; *Bur. Law Dict., Concealers; Jacobs' Law Dict.*, same *tit.*; *Comyn's Dig.*, tit. *Prerogative*, D, 65. 4. Under this act, the right to the lands in question became vested on the 1st of January, 1800. A repeal of the statute

would not have divested the right. ( *Smith's Com. on Stat.*, 679, 880, 895, 896 ; 6 *Cranch*, 87, 135 ; 9 *id.*, 43, 52, 53 ; 1 *Hill*, 324, 335, 336 ; 1 *How. Miss. R.*, 183 ; 3 *N. Hamp. R.*, 473.) 5. The statute of 1801 (1 *R. L.*, 562) is less incumbered with words, but reënacts substantially the provisions of the act of 1788. If defendant's title reached no farther back than the date of this statute, it would have become a vested one by force of its provisions in 1841. ( *The People* v. *Arnold*, 4 *Comst.*, 508.) In point of fact, it was more than forty years old when the statute was enacted, and became vested under it as soon as it took effect. 6. These statutes have no saving clause whatever. The bar to all claims of the people is absolute and unqualified, and subject to no exception. (24 *Wend.*, 587, 603 ; 20 *John.*, 33, 45, 67 ; *Beckford* v. *Wade*, 17 *Ves. Jr.*, 88, 91.) Their purpose, as clearly expressed in the language, is to secure to the citizen, who has been in possession and received the rents and profits for forty years, a right to the unmolested enjoyment of his estate as against the people.

II. The operation of the statutes of 1788 and 1801 on the rights of the defendant is not affected in any way by the provisions of the Revised Statutes or of the Code. 1. 2 R. S., 300, § 45, enacts that the previous provisions (including those in respect to suits by the people) shall not apply to cases where the right of action shall have then accrued, but that they shall remain subject to the laws then in force. (17 *Wend.*, 313 ; 3 *Paige*, 409.) 2. Section 77 of the Code, which repeals the provisions of the Revised Statutes, declares the same thing.

III. The position taken by the other side, that the statutes of 1788 and 1801 do not apply to suits in equity, is wholly untenable. 1. The language of the statutes is very comprehensive, embracing all suits or proceedings, in all courts. The duty of giving them effect is obligatory upon every court, without distinction. (3 *Inst.*, 188 ; *Beckford* v. *Wade*, *supra ;* 20 *Johns.*, 33, 45, 47 ; 24 *Wend.*, 587, 603, *&c.*) The words

" sue or implead," which are used in the act of 1801, are of themselves comprehensive enough to include suits in equity. (3 *Inst.*, 188; *Co. Lit.*, 291, *a;* 6 *Wheat.*, 264, &c., 10 *Paige*, 517.) 2. The right given by the statutes, viz., that of freely and quietly holding and enjoying one's estate, can be invaded as well through the agency of a court of equity as that of a court of law. By this construction, therefore, the great and beneficial object of the statutes would be defeated whenever the sovereign chose to proceed in equity. The king, by his prerogative, can sue in any court he pleases. He might, therefore, in equity, at any time set aside his grants. (1 *Dan. Ch. Prac.*, 4; 4 *Inst.*, 17; *Comyn's Dig.*, tit. *Prerogative, D,* 85; *Bacon's Abr., Prerogative, E,* 7.)

IV. The proposition of the plaintiffs, that as the proceeding here is merely to vacate a patent, and not to dispossess the defendant, it is not a suit "for or in respect to lands, tenements or hereditaments," is equally groundless. 1. If a patent granting lands concern them, so must a suit to annul it. 2. Plaintiffs seek to overthrow the title of defendant and establish their own. 3. The right of possession follows the title. 4. The act of 1788 says the people will not make any title, claim, &c. 5. That of 1801 says they will not sue by reason of any right or title they may have. 6. The tenants of defendant could attorn to plaintiffs if judgment should be given in their favor. (1 *R. S.*, 744, § 3.) Plaintiffs could, also, sell the lands. 7. Hereditaments are among the subjects enumerated, in respect to which no suit shall be brought; and title to land is a hereditament.

V. The further position of plaintiffs, that as the patent is alleged to have been obtained by fraud, the statutes do not apply, has nothing in it. 1. The bar is absolute, with no exception as to fraud or anything else, and depends simply on the facts of possession, and taking the rents and profits. (4 *Comst.*, 508; 24 *Wend.*, 587, &c.; 4 *Humph.*, 312; 9 *How. U. S. R.*, 522, 529; 3 *Murphy*, 115; *Martin & Yerger,*

361; 2 *Munf.*, 511; 20 *John.*, 33, 45, 46, 47; 17 *Vesey, Jr.*, 88, 91.) 2. The proposition under consideration is founded on a rule of equity, by which that court, in applying the statute by way of analogy, have limited its operation. As in these cases the court was not within the letter of the act, it exercised a discretion in applying it. (2 *Schoales & Lefroy*, 629; 20 *John.*, 47; 24 *Wend.*, 595.) Here, all discretion is precluded, for the act applies to all courts. (5 *Wend.*, 30; 17 *id.*, 202; *and cases above cited.*)

VI. If the words of the statutes under consideration did not include courts of equity, and this is to be taken as an equitable proceeding, the statutory bar would still be effectual against the claims of the plaintiffs. 1. When a court of law and of equity have concurrent jurisdiction, and there is a legal as well as an equitable remedy in respect to the subject matter of the action, the statute governs. (24 *Wend.*, 587; 1 *Paige*, 100; 20 *John.*, 584; 16 *Wend.*, 476; 7 *John. Ch.*, 113, 118, &c.; 12 *Peters*, 32; 2 *Sch. & Lef.*, 629, 630, 633; 2 *Story's Eq. Jur.*, 982, § 1520; 3 *Murphy*, 115; 1 *Ball & Beat.*, 166; 1 *Sch. & Lef.*, 413, 435; *Martin & Yerger*, 361.) 2. There always was a legal remedy to vacate letters patent, viz., *scire facias*. (4 *Inst.*, 72, 88; *Bacon's Abr.*, *Scire Facias, C.* 3; *Comyn's Dig, tit. Patent*, *F*, 2, 3, 4, 5, 6; *id., tit. Courts, B*, 1; *id., tit. Chancery, C*, 1.) One cause of action set forth is for a forfeiture, which is purely legal. 3. By the Revised Statutes a *scire facias* to vacate letters patent, for certain causes, including those set forth in the complaint, issued out of the supreme court. (2 *R. S.*, 578, § 12.) *Scire facias* is now abolished, and an action under the Code substituted, for all the causes of action named in the Revised Statutes. ( *Code*, § 433.) Therefore, conceding that the complaint alleges grounds of equitable jurisdiction, it is impossible to say, from the form or the purposes of the action, whether it be legal or equitable. So grave a question as the application of the statute cannot,

certainly, depend on what the attorney-general chooses to call this proceeding.

VII. The ground on which courts of equity, when deciding a matter of pure equity, have excepted fraud from the operation of the statute, is that it had been secretly committed or concealed; but in such cases they have done no more than to allow a party to sue within the time of the legal limitation after the discovery of the fraud or the possession of the means of discovery. (2 *Sch. & Lef.*, 634; 7 *John. Ch.*, 122; 3 *Murphy*, 583, 589, 593; 20 *John.*, 45; 6 *Wheat.*, 497; *Angell on Limitation*, 210.) 1. Here the alleged fraud, from its nature and the adverse possession of the land by Governor Clarke and those claiming under him, could not have been long concealed. (3 *Murphy*, 583, 589, 593.) 2. Governor Clarke's interest in the patent was openly declared by his withdrawing from the council. That he was interested in patents, issued while he was in office, was notorious. (2 *Smith's Hist. of N. Y.*, 68, *Hist. Soc. ed.*) 3. That Corry's associates were merely trustees, was avowed and known at the time. 4. In the case of a direct technical trust, of which equity has exclusive cognizance, if the trustee openly disclaim the trust, and hold adversely (a fraudulent and dishonest act), the *cestui que trust* will be barred by lapse of time. (7 *John. Ch.*, 113, 123, 124, 125; 2 *Story's Eq. Jur.*, 985, 986.) 5. There is no allegation in the complaint of concealment, or want of knowledge, or of any excuse for the long delay in bringing the suit. This was necessary. (7 *Paige*, 197, 198; 24 *Wend.*, 595; 2 *Sch. & Lef.*, 635, 636; *Story's Eq. Pl.*, § 503; 1 *How.*, 161, 167; 1 *Edw. Ch. R.*, 323.) For the rule in respect to constructive trusts, originating in an act of fraud, *see* 3 *John. Ch.*, 216, *and cases cited;* 17 *Ves. Jr.*, 88, 97; 4 *John. Ch. R.*, 316.)

Other questions were discussed by counsel, but as they were not passed upon by the court, the arguments are omitted.

DENIO, J. With a view of coming immediately to the question arising under the statutes of limitation, I shall avoid the discussion of several questions which have been elaborately argued at the bar, but which, in the view I have taken of the case, are not absolutely necessary to be determined in order to decide it. I shall not inquire, therefore, whether the several matters alleged in the complaint as fraudulent suggestions or concealments of material facts are in their nature sufficient to avoid a patent granted subject to quit-rents and conditions for the settlement of the land, nor whether the fact that the alleged fraud was committed, if at all, at a period so remote that no testimony now extant could be expected to be found to explain the transaction, if susceptible of explanation; nor whether the act of 1830 (*Laws of* 1830, 404, *ch.* 323), by which "the right reserved to the state of vacating the grants made by patent founded upon the condition that actual settlements should be made within the period mentioned in the patents," was released by the legislature, applies to grants made by the crown before the revolution, or is confined to such as were subsequently granted by the state. For the same reason I shall reserve a final opinion upon the important question, whether the people of this state, by the revolution and the constitutional and statutory provisions of that period, succeeded to any rights which the crown may have possessed, of applying to the courts to vacate this grant on account of fraud. It is conceded that the patent was not void, but only voidable. (*Jackson* v. *Lawton*, 10 *John.*, 23; *Jackson* v. *Hart*, 12 *id.*, 77; *The People* v. *Mauran*, 5 *Denio*, 389.) The title to the land, therefore, passed to the patentees. The statute affirming the transmission of the rights of the English government to the people of this state, declares the transfer to be of "all messuages, lands, tenements and hereditaments, and all rents, royalties, franchises, prerogatives, privileges, escheats, forfeitures, debts due, duties and services." (1

*Greenl.*, 31, § 14.) None of these words seem entirely appropriate to describe a right of action like this. The 36th section of the constitution of 1777 declares that nothing therein contained shall be construed to affect any grants of land made by the authority of the king, prior to the 14th day of October, 1775. The learned justice of the supreme court, whose able opinion in this case we are reviewing, a most respectable authority upon questions of title to land depending upon ancient grants, has declared that this provision of the constitution has always been regarded as confirming the royal patents granted before the revolution. It was this constitution which, as respects this state, dissolved the former political institutions by which the colony was governed, and organized the new sovereignty; and it is not a forced exposition of the provision to hold that it was intended to withhold from the government about to be created the right to affect or impair the grants of its predecessor. If in connection with this consideration we look at the provisions of the statutes recognizing the right of the state to the quit-rents and furnishing a system for their collection, and afterwards for their commutation, it will be difficult to maintain that such a suit as this is consistent with any fair construction of the acts of the first convention and of the early legislatures upon these patents. But, as before remarked, it is intended to pass over this branch of the case without expressing a definite judgment upon it.

The statutes of limitation which bear upon this case are those of 1788 and 1801. (*Stat. of* 1788, *ch.* 43, 2 *Greenl.*, 93; *Stat. of* 1801, *ch.* 189, 1 *Webst.*, 619.) The act last referred to was not revised in 1813, but continued the law until the revision of 1830. The new statute of limitations then passed was prospective, and does not apply to any case where the right of action had accrued prior to its passage. (2 *R. S.*, 300, § 45; *McCormick* v. *Barnum*, 10 *Wend.*, 104; *Van Hook* v. *Whitlock*, 3 *Paige*, 416; *Cole* v. *Irvine*, 6 *Hill*, 634.) The cases where the right of action had

previously accrued were to remain subject to the laws then in force. So again when the Code of Procedure came to supersede the statute of limitations passed in 1830, there was a similar exception as to rights accrued, which were left to be governed by the antecedent provisions. (§ 73.) These two acts of limitation must, therefore, be laid out of the case. The right to impeach the patent for fraud accrued at the time it was issued, and the breach of the condition as to cultivation and settlement took place, at farthest, at the expiration of seven years from the date of the patent, or in 1744.

The doctrine of the common law was, *nullum tempus occurrit regi;* and this principle, though it has a certain association with the idea of royal prerogative, has nevertheless been generally adopted in this country upon questions arising between the government and its citizens. (*Jackson* v. *Winslow*, 1 *John.*, 80 ; *Jackson* v. *Gumaer*, 2 *Cow.*, 552 ; *Stokes* v. *Dawes*, 4 *Mason C. C. R.*, 268 ; *United States* v. *Hoar*, 2 *Mason*, 311.) But the doctrine both in England and in this country has been qualified by statutes limiting the time within which the government must assert its claims in the courts of justice. The first act of limitation of suits by the crown was the 21 James I., ch. 2. (*Vin. Ab., Prerogative, H, e,* 2 ; *Coke*, 3 *Inst.*, 188.) It enacts that the king, " his heirs or successors, shall not hereafter sue, impeach, question or implead any person or persons, for or concerning any manors, lands, &c., nor make any right, claim or demand, of, in or to the same by reason of any right or title accrued sixty years past or more and now *in esse*, &c.," unless he " or some other under whom he claims have been answered (by force of such right or title) the rents, issues or profits thereof within sixty years next before the beginning of this parliament; or that the same have been duly in charge to the king or Queen Elizabeth within the space of sixty years." The time from which the space of limitation was to be reckoned backward, by this statute, being a fixed period, it

gradually receded, till in the course of time it became so remote as to afford little if any protection against stale claims of the crown.    Accordingly, in the early part of the reign of George III., it was reënacted in nearly the same terms, except that the time of commencing the " action, bill, plaint, information, commission or other suit or proceeding," is the period from which the time of computing the period of limitation is to commence.  (*Statute of 9 George III., ch.* 16 ; *Bac. Ab., D,* 86 ; *and see Goodtitle* v. *Baldwin,* 11 *East,* 488, *for an abstract of the statute.*)  The first section of our act of 1788, is nearly a literal transcript of this act, except that the period of limitation is forty years, and except that the act does not take effect until the 1st day of January in the year 1800. The same comprehensive words are used : " The people,  &c., shall not nor will " " *sue, impeach, question,* or *implead* any person" "*for* or *in any wise concerning* any manors, lands," &c. ; and, as though this language might be held too narrow to embrace every method of attacking the citizen as to his lands, it is added, " or make any *title, claim, challenge* or *demand, of, in* or *to* the same ;" and again, " within the space of forty years next before the *filing, issuing* or *commencing* of every such *action, bill, plaint, information, commission,* or *other suit or proceeding.*"

The act of 1801 is substantially a reënactment of the one of 1788, but with considerable change and lopping off of the exuberant phraseology contained in the former statute, and in the English acts from which it was copied.   It is obvious, however, that the design of the person who drew it was to embrace all the features of the former acts.   All the words in those acts which are used to refer to the manner in which suits can be commenced are reduced to the two, " sue or implead."    The words defining the subject of the suits to be barred are altered from " for or *concerning* any manors, lands, &c.," to " for or in respect to any lands," and the reference to the time of reckoning the period of limitation is " before any *suit or other proceeding* for the same

shall be *commenced.*" The exception relating to the taking of the rents and profits is changed from "have been *answered* the rents and profits," to "shall have received the rents and profits." The exception contained in the English acts, of the case where the premises "have been had in charge" within the time of limitation, is omitted, as it is inapplicable to any transaction known here. In short, the statute is the same enactment in a less antique dress, and in language more condensed and better suited to the fastidiousness of modern taste. It is a well settled rule that a change of phraseology in a revision of a statute will not alter the law, unless it evidently appears that such was the intention of the legislature; and this is especially so where the revised statute is an ancient one and has received a settled construction. ( *Taylor* v. *Delancy*, 2 *Cai. Ca.*, 151; *case of Yates*, 4 *John.*, 359; *matter of Brown*, 21 *Wend.*, 316; *Theriat* v. *Hart*, 2 *Hill*, 380.) There is not here the slightest reason to believe that any substantial change was intended; or, if there was, that it was of such a nature as to exempt from the scope of the enactment any description of legal proceedings respecting lands which were before embraced in it.

The present suit is in the nature of a bill in equity to set aside the patent for fraud in procuring it. It also resembles a suit by *scire facias* to vacate a patent; but in this last aspect it cannot be sustained. By the Code of Procedure the writ of *scire facias*, &c., are abolished; and the remedies heretofore obtainable in those forms may be obtained by civil actions under the provisions of tit. 13, chap. 2, § 428. Section 433 provides for an action by the attorney-general in the name of the people for the purpose of vacating or annulling letters patent granted by the people of this state in certain cases, and among them cases of fraud in obtaining it; but there is no provision for any such action relating to a patent of the crown of Great Britain. A similar provision, giving a *scire facias* in terms, was contained in the Revised Statutes before

it was made unlawful to call judicial writs by their right names. (2 *R. S.*, 579, § 12.) It need not, however, be insisted that this is not a suit by *scire facias*, as the most favorable aspect of it to the appellants is to consider it in the nature of a bill in equity. It was long ago determined that such a suit by bill would lie in the English court of chancery, and the supreme court of this state has frequently assumed that such a bill would lie to vacate a patent for fraud. (*Attorney-General* v. *Vernon*, 1 *Vern.*, 277, 383; 10 *John.*, 23; 12 *id.*, 77.)

The objections of the appellants to the application of the statute of limitations are, 1st, that this is not a suit, within the meaning of the act; and, 2d, that it is not "for or concerning any lands." In common parlance as well as in legal language a proceeding in chancery by bill is a suit in that court. Indeed that was the most appropriate term, for prior to the Code the term action was appropriated to proceedings in the courts of law. It would be easy to collect from precedents and reports instances enough of such use of the word, but I am sure it is unnecessary. Then as to its relation to land; for if it has not that feature the statutes certainly do not apply. If it is "for or in any wise concerning" any lands, it is within the act of 1788, or if by the proceeding the people "make any title, challenge or demand, of, in or to" any land, it is equally within it; and if it is within that statute, it has been shown that it is also within the act of 1801. It is true that it is not technically an action to recover the possession of land. It merely seeks to annul the only title which the defendant has to the premises patented; and the only effect, if the plaintiffs prevail, will be, that the land will belong to the state in its political and sovereign capacity as the owner of all ungranted lands, and that the commissioners of the land office will be bound to sell it to any one who will offer a fair price. (2 *R. S.*, 580, § 25.) Whichever set of words are used, they embrace in my opinion this proceeding. But we are not without

authority upon the very point in question. Lord COKE, in the third Institute, has a commentary on the statute of James, which it has been seen is identical in language with our act of 1788. After citing the words, "that the king's majesty, his heirs or successors, shall not at any time hereafter sue, impeach," &c., he says : " 1. This clause extendeth to all manner of suits, &c., either in law or in equity.; 2. To all manner of courts whatsoever ; 3. It extendeth not only to all manner of suits, but to all impeachments, questionings, impleadings, making of title, claims, challenges or demands." " 6. So as to all suits of *scire fac*' or other process upon any record." It is to be presumed that when the legislature of 1788 used this same phraseology, they did so with a knowledge of the interpretation put upon it by this eminent sage of the law ; and so, when the act was revised in 1801, preserving all its essential features, but pruning it of its redundant words, it is not to be supposed that it was designed to limit it in such a manner that certain legal proceedings in which the title of a citizen to his estate might be taken away, should be without the protection of the statute. So far as the allegations of fraud in obtaining the patent are concerned, the forty years, deducting seven years for the period of the war, which is excluded from the computation of both the acts, expired in 1790. The alleged breaches of conditions subsequent took place, as to one of them in three and to the other in seven years afterwards. When, therefore, the act of 1788 took effect on the 1st day of January, 1800, the people were absolutely precluded from maintaining their suit on any right which they had arising out of the alleged fraud in obtaining the patent. They could not allege the breach of condition as to clearing and cultivating the land after 1793, or that respecting the occupation of it by settlers after 1797. This suit is therefore barred by the statute of 1788. There is a provision in each of the acts prior to the revision of 1830, declaring in effect that when the government is barred by the statute, the other party shall

quietly and freely have, hold and enjoy the land, &c., against the government. This point, Lord COKE says, "is affirmative, and establishes the estate of the subject." (3 *Inst.*, 189.) But this is unimportant, as it is a sufficient defence to this suit that the statute has run against it.

The 27th section of the Code, providing a limitation of twenty years to the people, after a patent issued by them has been declared void, is undoubtedly a qualification of the act of limitation therein contained. It is inapplicable to this case, because that statute of limitation does not apply, and also because it relates expressly to patents granted by this state, and does not extend to grants from the crown.

The award of costs against the people in the court below is said to be erroneous. Costs may be awarded against the people when they fail in a suit, as well as against a citizen. (*Code*, § 319.) We think it is a case in which an extra allowance might be made under § 308 of the Code, upon sufficient facts shown. Whether the amount allowed was proper under the circumstances, is a question not before us, as the papers upon which that point was determined have not been returned on this appeal. (*Decker* v. *Gardiner*, 4 *Seld.*, 29.)

The judgment of the court below ought to be affirmed.

TAGGART, J. The first question I propose to examine in this case is whether the statute of limitations is a bar to the action. It is very clear that neither the Revised Statutes nor the Code has anything to do with the case. The action is barred by the act of 1801, if barred by any statute of limitations. The right of action accrued either in 1737, or on the day after the first Monday of May, 1745, or at the expiration of three years from the date of the letters patent.

If the right of action accrued either on the ground that the letters patent were obtained upon false suggestions, or that the interest of the Lieutenant-Governor, George Clarke, in procuring the letters patent was concealed from the council and from the crown, or because the names of twelve of

the patentees were made use of in trust for William Corry, such right of action accrued immediately upon the granting of the letters patent.  If the right of action accrued on the ground that three acres of every fifty acres of the land were not effectually cultivated within three years, it accrued in 1740 ; and lastly, if the right of action accrued upon the ground that thirteen families were not settled on the land within seven years after the 1st of May, 1738, such right accrued on the 2d day of May, 1745.

Unless the act of 1801 is a bar, the answer is bad and the plaintiff is entitled to judgment.  It ·is objected that there is no statute of limitations which bars the proceedings instituted in this case.

The case of *The People* v. *Arnold* ( 4 *Comst.*, 508) was an action to recover the possession of fifty acres of land.  The complaint alleged that the plaintiffs had good title in fee simple and were entitled to the immediate possession of the land.  The defendant answered " that no right or title to the lands and premises described in the complaint accrued to the plaintiffs within the space of forty years before the commencement of the action, and that if any right or title ever accrued to the plaintiffs the same accrued more than forty years before the commencement of the suit, and that neither the plaintiffs nor those under whom they claim have received the rents and profits of said lands or any part thereof within the space of forty years before the commencement of the suit."  This court decided that the answer was a good one, but said that to constitute a bar there must be such a holding for forty years as would constitute a good. adverse possession if the land had been held by an individual instead of the state.

The answer in this case is as full and complete as in that ; the words " and that if any right or title ever accrued to the plaintiffs the same accrued more than forty years before the commencement of the suit," add nothing to the validity of that answer.  The answer in this case goes still farther than

in that. It sets up an adverse possession by averring that, during the whole space of forty years before the commencement of the action, the defendant and his father, and those deriving title from the defendant, have respectively been in the uninterrupted, exclusive and actual possession and enjoyment of the lands, and have received the rents and profits thereof, claiming in good faith to own and be seized of the said lands and all the hereditaments thereunto belonging, adversely to the said plaintiffs and every person whatsoever.

Judge BRONSON in the above case of *The People* v. *Arnold*, says : " The statute says nothing about adverse possession, and that is not a matter to be pleaded."

I am unable to perceive any objection to the answer in this case upon the grounds relied upon in the demurrer, if the action itself is such a one that the statute of limitations is a bar to it. Were this an action to recover the possession of lands, the case would be clearly within the principle of the one above cited. But this is an equitable action, brought, not to recover the possession of lands, but to vacate letters patent, and it is insisted on the part of the plaintiffs that it is not a suit ; that the words " suit" and " action" have always been confined to proceedings at law.

The language of the act of 1801 is broad and comprehensive. " The people will not sue or implead any person for or in respect to any lands, tenements or hereditaments:" also, " the persons, &c., holding such lands, tenements and hereditaments shall freely hold and enjoy the same."

The plaintiffs in this case have either sued or impleaded the defendant. The word "implead" is defined in *Bouvier's Law Dictionary* to be " to sue or prosecute by due course of law." Admit that this term applies to a suit or proceeding at law more properly and strictly than to a proceeding or suit in equity, yet this is not, I apprehend, a sufficient reason to allow it to defeat the operation of the statute. The statute speaks also of *proceeding*, in the clause, " forty years

before any suit or other proceeding for the same be com-menced." The word "proceeding" is a more general and comprehensive term than "suit" or "implead," and must include an action like the present. This is certainly a pro-ceeding "in respect to" lands, although not a suit or proceeding for lands. There appears, then, to be no reasonable doubt that the statute of limitations is applicable to this case. If, however, there remains any doubt upon the point, such doubt is dissipated by the decision of the court of errors in the case of *Humbert* v. *Trinity Church* (24 *Wend.*, 587). In that case the plaintiffs filed their bill to settle the boundaries of certain lands in the city of New-York, and also to take an account between the plaintiff and defendants of certain other lands alleged to be held by the parties as tenants in common. The bill was filed in 1834, and the defendants had been in actual possession of the lands since 1785. The defendants demurred to the bill and the demurrer was sustained, the court holding, among other things, that the statute of limitations was a bar to the action. Mr. Justice COWEN, in delivering an opinion in this case, cites from the case of *Cholmondely* v. *Clinton*, as reported in 4 *Bligh's Parliamentary Cases* (old series), at page 119, where Lord REDESDALE, speaking of the statute limit-ing an ejectment to twenty years, says: "I take it to be a positive law which ought to bind all courts ; and for that reason I have taken the liberty in another place to say that I considered it not simply a rule adopted by courts of equity by analogy to what had been done in courts of law under the statute, but that it was a proceeding in obedience to the statute, and that the framers of that statute must have meant that courts of equity should adopt that rule of pro-ceeding." The learned justice then says : " This, it appears to me, is substantially giving up the right to qualify the statute by cases not provided in itself, even while we stand exclusively on equitable grounds."

Both upon reason and authority, then, the defence is a valid one. The action to vacate the letters patent under which the defendant derives and holds his title is an action "in respect to lands, tenements or hereditaments." It is not, nor does it purport to be, an action to recover the possession of lands, and the act of 1801 is not confined to actions of that character, but applies where the decision of the case can in any way involve or affect the title to lands. The construction contended for by the plaintiffs would in many cases utterly defeat the beneficial operation of the statute. The plaintiffs might, in a case like the present, at the end of a thousand years after granting the patent, file their bill to vacate such patent on the ground of concealment, and recover in that action. This judgment furnishing conclusive evidence of their right to recover, the people might within forty years thereafter maintain their action for the possession of the lands. This construction, therefore, would lead to great injustice and cannot be sustained; and the judgment of the court below, so far as relates to the right of the plaintiffs to recover, must be affirmed.

The plaintiffs, however, object that the extra allowance of $1100 costs was erroneous. Section 308 of the Code provides, that if the action be for the recovery of money or of *real or personal property*, and a trial has been had, the court may in difficult or extraordinary cases make an allowance of not more than ten per cent on the recovery or claim, as prescribed in § 309, for any amount not exceeding $500, and not more than five per cent for any additional amount. It is claimed that this action is substantially for the recovery of real property, and the allowance of $1100 is attempted to be sustained on that ground. This is clearly erroneous. This is not an action for the recovery of money or of real or personal property; it does not, therefore, fall within the part of § 308 above cited. There can be no extra allowance under that part of the section in equity

actions (so called), although such actions may be difficult or extraordinary. The phraseology of this part of the section is not like the act of 1801. That act had relation to suits *for or in respect to* lands: the Code relates to actions for lands or real property. But it does not appear by the case upon what grounds the allowance was made. It rests upon the appellants to show that the allowance was an improper one. (*Decker* v. *Gardiner*, 4 *Seld.*, 29.) It does not appear from the case but that the allowance might have been made under the clause of the section authorizing an extra allowance where the prosecution or defence has been unreasonably or unfairly conducted. The judgment must be affirmed as to the costs as well as upon the merits.

All the other judges concurring in the above conclusions,

Judgment affirmed.