McKinstry, J.
The action was treated by the court below as an action “to quiet title,” under section 738 of the Code of Civil Procedure, and may properly be said to be such an action. The absolute ownership of the lands by the plaintiff is averred, and it is alleged that the defendants claim rights under the acts of the legislature, and a certain instrument purporting to be a patent, which are mentioned in the complaint. Besides the prayer for general relief, there is a special prayer that defendants be summoned to answer the premises, and that the court decree to be invalid all claims of defendants under or by virtue of the alleged legislative grant or patent.
Section 254 of the act known as the practice act, reads :
“ An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest.”
Under that section the owner in possession, on knowledge of the assertion of an adverse claim, could require the nature and character of the adverse estate or interest “ to be produced, exposed, and judicially determined.” (Curtis v. Sutter, 15 Cal. 263.) “ There was no difficulty in so conducting a suit, under the statute, as fully to protect the legal rights of the parties, and at the same time to secure the beneficial result afforded by a court of equity in bills of peace—which is repose from further litigation. Indeed, the remedy under the statute was eminently simple, direct and efficacious.” (Ibid.)
Section 738 of the Code of Civil Procedure is like section *556 254 of the former act, except that since the adoption of the code the action may be brought by one out of possession. Bow, as formerly, the defendant may assert a legal estate, or any equity which he may claim to have enforced, the difference being that while under the former statute the possession of the plaintiff was evidence, prima facie, that he was seized in fee, now the plaintiff out of possession, as against the defendant in possession, must prove in himself a legal paramount title which entitles him to the possession. The plaintiff—assuming the state to be entitled to the possession—might have brought an action at law for the recovery of the lands. Under the code, one having the legal title is not required to bring his action at law, and then, after recovery of the possession, to file a bill to quiet his title or possession against equitable claims asserted by the defendant in the ejectment, and to have such claims decreed to be invalid, but may secure both ends in one proceeding. It may be the original defendants herein would have been entitled to demand a jury to try the legal issue as to the right of possession, but a jury was expressly waived. The plaintiff has asked, in effect, that the adverse claims of the defendants be jjroduced, exposed, and adjudicated. The people, when they had established their legal title and right of possession, were to be treated as if they were in possession when the complaint was filed. In their answer the defendants, appealing, allege facts, which, with the evidence to support the allegations, they contend show that they have acquired the legal title of the state by virtue of a compliance, on the part of their predecessors, with the conditions of certain acts of the legislature, to wit: an act “to provide for the construction of canals,” etc., approved April 11, 1857; an act amendatory of the last-named act, approved April 10, 1862, and an act “ in relation to the construction of canals,” etc., approved April 25,1868. (Stats. 1857, 192; Stats. 1862, 190; Stats. 1863, 494.) Of these, further reference need be made only to the act of 1862.
The defendant says that such reclamation was made, within three years, as was required by the act of 1862; and that the governor and surveyor general certified to the reclamation as provided in the sixth section of that act. But the evidence sustained the finding of the court below, that neither the grantees *557 nor their assigns ever reclaimed, so as to make the lands susceptible of cultivation, any of the districts described in the act. And the court also found that the governor and surveyor general never certified to the reclamation of the lands in any district. There is no pretense that the surveyor general ever joined in any certificate that lands had been reclaimed, unless the patent, signed by the governor and countersigned by the “ register of the state land office,” constitutes such certificate. The register had no power except such as was conferred by statute (Hittell’s Gen. Law. par. 4196) ; and the duty of certifying to the reclamation, imposed by the act of 1862, was imposed upon the surveyor general. The fact that the same person held both offices did not authorize the register to assume a function committed to the surveyor. But if the patent be considered as a writing signed both by the governor and surveyor general, it contains no declarations or recitals showing that the statute conditions had been complied with. The statute divides the lands described in it into three districts, and provides for the vesting of the state title to (one-half of ?) the odd-numbered sections within a district, upon reclamation of all the lands within such district. The patent does not recite that the lands of any district have been reclaimed. And of the recited considerations for the grant, one is the <i release” by the patentees of all the other lands mentioned in the act of 1862. Clearly, the patent is not, and does not purport to be, the approval and certificate required by that act. As a pretended conveyance the patent is void, because there was no law which authorized the governor to sign, seal, or issue it.
It is urged by appellants that a certain message of the governor to the senate and assembly, advising legislation—never enacted—which would empower him to do that which he subsequently attempted to do, without any law authorizing it (to issue a patent for lands within the description contained in the act of 1862), is a certificate of reclamation, such as is required by the act. In his message, the governor said: “We believe that under the provisions of the acts referred to, the grantees and their assigns are entitled to, or at least have a strong claim to, the odd-numbered sections,” etc. By the statutes, the duty of the governor and surveyor general was distinctly laid down. *558 If any of the districts was reclaimed within three years, it was the duty of the two officers so to certify.- Without such certificate, no title to any of the lands became vested in the grantees. (Stats. 1862,192, § 6.) We cannot construe a document to be a certificate, the writer of which carefully avoids a certification.
The state has never parted with the legal title. And, as neither the original defendants herein nor their predecessors acquired a perfect equity in the lands, such as would authorize them to demand the statutory certificate from the governor and surveyor general (even if it be conceded, notwithstanding the proviso of the sixth section of the act of 1862, that the grantees might, by performance of the condition precedent, have acquired an equitable right to the possession, as against the legal title), the state is entitled to the possession of the lands.
It may be claimed that, inasmuch as the act of 1862 does not limit the time within which the governor and surveyor general shall certify to the reclamation of the lands, such certificate may still be made; and the defendants should be allowed to remain in possession, under the state, until those officers have discharged their duty of determining whether or not the required reclamation was made within the three years mentioned in the statute. But the statute does not impose on the governor and surveyor general the duty of certifying that the lands were not reclaimed. So that, if the defendants are justified in the assertion of the claim suggested, they have acquired all the benefits of a title in fee, without the performance of the condition precedent, or the occurrence of the event, on which it was to be acquired. Even if it should be admitted, that, if the governor and surveyor general had made the statutory certificate, such certificate would be conclusive evidence that the condition precedent had been performed, the defendants (the condition precedent not having in fact been performed) should not be permitted to remain in possession without the certificate. At the end of three years after the passage of the statute, no presumption came into existence that the grantees had done the work required—for the state could not thus be deprived of its rights by a presumption. On the contrary, the burden was, and continued to be, on the grantees, or their assigns, to prove *559 that the work had been done, the doing of which constituted a condition precedent to the acquisition of any rights by them. The presumption, in the absence of evidence, would have been that the work was not done within the three years, or at all; a presumption to be overcome by proof on the part of the grantees or assigns that it was done. A certificate of the governor and surveyor general that it had been done, might, perhaps, have been sufficient evidence that the work was done. But as to this, it is not necessary to express an opinion.
2. The appellants contend that if they and their associates have not the legal title, yet by reason of expenditures on the lands they have acquired an equity which should protect their possession, as against any proceeding in a court of equity. It is said the present suit is to enforce a forfeiture, and that equity will not entertain a bill to declare or enforce a forfeiture. The suggestion is, that the court below, as a court of equity, had no jurisdiction to try the right of possession at law, disconnected from the adverse pretension of defendants to legal or equitable rights, and that a determination that such adverse pretension is without foundation, must involve a forfeiture of defendants’ equitable rights. But the action is not to forfeit any rights of the defendants. It is an action, under section 738 of the Code of Civil Procedure, to obtain a judgment that the plaintiffs are legally the owners of the lands; that the defendants have no legal estate, nor any equities such as would entitle them to retain the possession as against the title of the state; and that they have no equities which would justify a decree in their favor as against the legal owner in possession. Plaintiffs having shown that they are at law entitled to the possession, the case, in other respects, is to be treated as if the plaintiffs were in possession when the complaint was filed. In an action under the provision of the code both the legal and equitable rights of the parties may be determined. Treating plaintiffs as in possession, the onus was on the defendants to show that they should be relieved of the alleged “forfeiture,” or rather that they should be relieved of the consequences of a failure to execute their contract according to its terms. (Crook v. Forsyth, 30 Cal. 662.) The act of 1862 was a contract by which the state granted certain lands, upon condition of work to be performed, *560 the grant to take effect when the work was done; a contract hy which valuable rights might have been acquired absolutely, upon the performance of the acts specified as the consideration moving to the state. It was, at most, a grant upon condition precedent. (Montgomery v. Kasson, 16 Cal. 189.)
The grant never took effect, because the condition precedent was never performed. If it should be conceded that the original defendants have asserted a claim to relief, based on a part performance, within the three years mentioned in the act of 1862, or by reason of anything which has occurred since, it was for them to establish affirmatively that they were entitled to such relief.
3. The original defendants have failed to establish that they are entitled to any relief. It is true, a court of equity does not favor forfeitures. It will not aid in divesting an estate. It may interfere to prevent the divesting of an estate. But here there is no question of forfeiture. By the terms of the agreement between the state and the parties named in the statute, the whole of the work required was a condition precedent, and a court of equity will not, by its decree, give an estate which has never vested. (Carey v. Bertie, 2 Vern. 398.)
Nor could the court treat the answer of the defendants as a bill in the nature of a bill for specific performance, and grant the relief appropriate to such a suit. It does not appear that the grantees or their assigns have ever reclaimed the lands in any district; and if they had, they certainly would not be authorized to dema!nd a conveyance of any lands without such district, or of any lands within it, except the odd-numbered sections. But, independent of the consideration last suggested, the statute of 1862 clearly makes time of the essence of the contract. The whole tenor of the statute shows this, and the ■ fifth section reads : “ A failure to comply with the provisions of this act * * * shall work a forfeiture of said grant,” etc. As we have seen, it has been judicially determined that the grant was not to take effect until the conditions were performed. (Montgomery v. Kasson, supra.) If section 5 had any effect, it operated suo Marte, at the end of three years, and no action of any court was necessary to give it force. But, whatever its effect in other respects, it clearly indicates that it was the in *561 tention of the parties to the contract that the “ grantees ” should acquire no rights, unless the lands of a district were reclaimed within three years. As between private parties to a contract for the sale and purchase of lands, time is of the essence of the contract, in the view of a court of equity, if it appears to have been the real intention of the parties that it should be so. (Fry on Specific Perf., 710 ; Waterman, 458.)
In the case before us, one of the parties to the contract is the state. Of course, we cannot decree that a patent be issued by the governor, or that a certificate be executed by the governor and surveyor general, or the creation of any other document to evidence a transfer of the state title—in the absence of a statute to authorize it. With reference to the disposition of state lands, the state officers have just such powers as the statutes confer, and none other.
In view of this fact, those dealing with the state with reference to such lands, do so with full knowledge of the necessity of complete performance of the contract on their part as a prerequisite to the acquisition of any rights. To decree to the successors of the persons named in the act of 1862 a muniment of title—the condition precedent on which alone they would have the right to receive it not having been fully performed—would be simply to dispose of the lands of the state without authority of law. The defendants did not acquire the title of the state, and we cannot adjudge that they ought to have it by reason of a substantial compliance on their part with the conditions of the grant. First, it does not appear that there has been such substantial compliance; second, time was of the essence of the statutory contract; and third, such decree would be in substance a decree for specific performance. We cannot decree that the state specifically perform a contract, where there has been no complete performance of the contract by the other party to it. To do so would be to deprive the state of lands which it has never granted, and which no officer of the state has power to grant. It would be an attempt to legislate.
4. It may be said that if it appear the grantees or their assigns could not, under the acts of the legislature, acquire an equity which a court of equity can enforce, the present suit should be dismissed, because the plaintiffs-had a perfect remedy *562 at law. Under our system, a defendant in an action at law to recover lands, against whom judgment has passed, cannot subsequently, in a distinct suit, assert a legal right which existed when the ejectment was commenced, nor subsequently claim relief based upon an equity which was pleaded by cross-complaint in the ejectment. So far the judgment in favor of the plaintiff, in the action of ejectment, is conclusive of the defendant’s rights. But a decree, in a suit under section 738 of the Code of Civil Procedure, that the defendant has no right, title or interest in certain lands, would seem to be more effective, as a final adjudication with respect to the legal rights of the parties, than would be a mere judgment for the recovery of the possession. The latter, to some extent, leaves open to be proved, by evidence dehors the record, what rights might have been asserted in the action of ejectment.
In an action under section 738 of the Code of Civil Procedure, it is not necessary to allege in the complaint the nature of the estate or interest claimed by the defendant. (Crook v. Forsyth, supra.) Until the answer comes in, setting forth the defendant’s claim, it need not appear that the issues to be tried will be legal, as distinguished from equitable issues. A proceeding by which one may compel another to expose and have adjudicated the nature of the interest on which he is asserting an adverse claim against the estate of the former, is one to be conducted in a court of equity. The discovery of the nature of the adverse claim precedes its adjudication.
It may be added that, strictly speaking, we have no separate courts of law and equity. Within the limits of the constitution, the legislature may provide the mode by which, in particular cases, the jurisdiction of the Superior Court shall be employed —may, amongst other things, prescribe the form of judgment to be entered.
Section 738 of the Code of Civil Procedure allows an action to be brought by any person against another who claims an estate or interest adverse to him. Its language is very broad. If the plaintiff is out and the defendant is in possession, nevertheless, the action can be maintained. So if the plaintiff and the defendant each claims to be the owner in fee. In the last case the question—who has the better right—may be tried in *563 the action in the form usually called (for want of a better name) ejectment, but it may also be tried in an action under section 738 of the code. Whether, when brought under the the code, the action be called an action at law, in which the statute authorizes a judgment determining the estate or interest claimed by the defendant, or be called a suit in equity to quiet the plaintiff’s title against the adverse claim, the Superior Court has jurisdiction. If it be considered an action at law, the defendant may demand a jury; but here, as we have seen, a jury was waived. In the case at bar, the defendants appealing averred in their answer that they were in possession of the lands when the action was commenced. The court did not find upon that averment, and defendants do not complain of the omission. But the omission is immaterial, because the action is maintainable whether they were or were not in possession.
5. An inspection of the complaint shows this to be a suit by the people of the state “ in respect to real property,” as to which the statutory limitation is ten yeai-s. (C. C. P., § 315.) Section 315 of the Code of Civil Procedure applies not only to actions at law to recover the possession of lands, but to suits in equity “ in respect to any lands ” to which an adverse possession for the time mentioned in the section may be pleaded in bar. (The People v. Clarke, 9 N. Y. 349.) The other sections of the same code, referred to in the answer of the defendants appealing, do not apply to actions brought by the state, because they do not expressly include such actions. (Angelí on Limitations, 34, 37.) Section 345 relates to actions mentioned in chapter third of the code. Unless, therefore, the limitation prescribed in section 315 is the only limitation applicable to the present action, there is no limitation of time within which such an action must be brought. It follows that the issues created by the presumed denials of the pleas of limitation which relate to sections of the Code of Civil Procedure, other than section 315, are immaterial issues, the failure to find on which is immaterial.
6. It has been suggested that the action is barred by section 315 of the Code of Civil Procedure, because it does not appear that the title on which the people rely was acquired within ten years prior to the commencement of the action.
*564 The section reads: “ The people of this state shall not sue any person for or in respect to any real property, or the issues or profits thereof,' by reason of the right or title of the people to the same, unless :
“ 1. Such right or title shall have accrued within ten years before any action or other proceeding for thesame is commenced, or,
“ 2. The people, or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years.”
It is plain the legislature did not intend to take from the state the right to recover a portion of its lands, if it should be ousted of its possession more than ten years aftet its title accrued. Mo-action can be brought for, or to recover the possession of, any lands of the state, until the state has been deprived of the possession. If such deprivation should not occur until more than ten years after the people acquired the title, and the provision of the code should be read as prohibiting a suit more than ten years after the title was acquired, the effect would be a loss to the state, by mere lapse of time, of all rights to lands to which it had originally a perfect title, and of which it had retained the possession until a point of time immediately preceding the entry of another. To give effect to the first subdivision of the section recited, it must be construed as declaring, in effect, that the people of the state will not sue “ for or in respect to real property,” except where the cause of action has accrued within ten years. Such is the language (forty being substituted for ten years) of section 362 of the Mew York Code of Civil Procedure. (Wood on Limitations, 677.)
7. Appellants contend that the order denying a new trial must be reversed, for the reason that the court below failed to find upon the issue made by the answer referring to section 315 of the Code of Civil Procedure, and the implied denial thereof.
When the court fails to find on a material issue, the judgment will not be reversed, if the finding omitted must have been adverse to the appellant. Such is the rule laid down in Hutchings v. Castle, 48 Cal. 152. The rule has been since followed. (McCourtney v. Fortune, 57 Cal. 617.) If carefully examined, the cases apparently in conflict with it will be found not to be really so.
*565 The time to commence an action under section 738 of the Code of Civil Procedure, is limited only by a continuous adverse possession of the lands for ten years, on the part of the defendant. The mere assertion of an adverse claim, without possession or' any preceding to enforce it, can never ripen into a legal or equitable right, as against one seized of the legal estate when the adverse claim was first asserted. Each day’s assertion of an adverse claim gives a cause of action to “ quiet title ” until such an action has been brought. An actual adverse possession of the land, accompanied by a claim to the fee, will give the legal title, in which will be merged all lesser estates or equitable claims which the possessor may have asserted. Here, on facts proved beyond controversy, the court could not have found a ten years’ continuous adverse- possession by the original defendants or their grantors:
The persons named in the acts of 1857 and 1862 entered into the possession under the contract with the state set forth in the former and substantially repeated in the latter act. The three years prescribed in the act of 1862 within which lands were to be reclaimed, as a condition precedent to the vesting of the state title in the grantees, expired April 10, 1865. There is nothing in the evidence to indicate that the grantees commenced to occupy adversely after the expiration of the three years. But, if this had appeared, the adverse holding was not continued for ten years. On the contrary, on the 11th day of November, 1867, the persons named in the act of 1862, or their assignees, received a patent, signed by the governor, with the state seal attached, purporting to grant to such persons and their assigns the state title to the lands to which this action relates, under which and the acts aforesaid the original defendants herein claim to have acquired the title. If it be conceded the patent is void, the reception of it, and claim under it, were nevertheless a recognition of the title of the state, which would have suspended the running of the statute even had the running of the statutory limitation commenced. (Farish v. Coon, 40 Cal. 33.) If, therefore, the court below had found ten years’ adverse possession by the defendants, or their predecessors, the plaintiffs would have been entitled to a new trial, since there was no evidence to sustain such a finding..
*566 Again, the “ grantees ” entered into possession of such land® as they took possession of, under a contract by which they agreed that no title should pass unless the governor and surveyor general should certify to certain reclamations. It is obvious that the defendants, who have neither reclaimed the lands nor received the certificate, had not been holding adversely to-the state when this action was commenced.
8. Appellants contend that the attorney general has no-powers except such as are conferred by statute, and no statute authorized him to bring this action. In People v. Stratton, 25 Cal. 242, the Supreme Court said that, without any statute expressly conferring the power, the attorney general may file an information in the nature of a bill in chancery to annul a patent, when the matter involved in the suit immediately concerns the interests of the state; but it is claimed that the statement was merely dictum. However • this may be, the legislature has expressly recognized the pendency and approved of the prosecution of the present suit. (Stats. 1877-8, p. 358.) This approval and ratification of the conduct of the attorney general relates to the filing of the complaint, and is equivalent to an original authorization to commence the action and prosecute it to judgment.
9. The patent relied on as constituting a certificate of reclamation, was issued without authority of law. Of this we take judicial notice. The patent is therefore void. Inasmuch as the instrument, if it remained uncancelled, would not pass the title, nor cast upon the state the burden of proving its invalidity by extrinsic evidence, liable to loss, or to be availed of only in a court of equity, it is no cloud on the plaintiffs title. (Pixley v. Huggins, 15 Cal. 127, and many cases following the rule there laid down.) But the action is brought not only to annul the patent, but for a decree that the plaintiffs out of possession are the legal owners entitled to the possession, and that the defendants have acquired no rights under the acts of the legislature. The question whether they have acquired rights under the acts of the legislature is to be determined upon evidence that the defendants or their predecessors did or did not reclaim the lands; or at least, that the governor and surveyor general had so certified, as required by the acts. Under the code, the *567 plaintiffs were entitled to have determined the claim of defendants that they were the owners of the lands, or had acquired some rights in them. Inasmuch as the court below declared as a conclusion of law, on the facts found, that the original defendants have no right, title, or interest in the lands to which they assert a claim, the further conclusion of law that the patent is void, and they have acquired no rights under it, is unimportant. As the greater includes the less, the declaration that the defendants have no right, title, or interest would include a declaration that they have none under the patent, if the last had been omitted. We ought not to grant a new trial merely because of an unnecessary and immaterial statement in the conclusions of law.
10. The notice, termed a notice of appeal from the judgment, was served and filed prior to the entry of any final or other judgment in the court below. The appeal from the judgment should, therefore, be dismissed. (McLaughlin v. Doherty, 54 Cal. 519; Thomas v. Anderson, 55 Cal. 43.)
The appeal from the judgment is dismissed, and the order denying a new trial is affirmed.
Ross, J., Sharpstein, J., and Myrick, J., concurred.