(February 13, 1890.)

## CHAMBERLAIN v. WOODIN.

[23 Pac. 177.]

NONSUIT—TESTIMONY—ELECTIONS.—When a motion for nonsuit is made by the defendant at the close of plaintiff's testimony, because of its insufficiency and overruled, if defendant then introduces his testimony, he waives his right to have the error in overruling the motion reviewed.

TESTIMONY—INSUFFICIENCY OF.—A judgment will not be reversed when there is a substantial conflict in the testimony, or unless it seems the result of passion or prejudice.

ELECTIONS.—When so irregular and fraudulent that the true result cannot be ascertained from the returns of the poll, they should be rejected and the true result shown by other evidence.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Hawley & Reeves and W. H. Savidge, for Appellant.

The issues being all material, it was the duty of the court to find thereon, and the failure to fully find upon them, and each of them, is sufficient ground for reversal of the judgment herein. (*Porter v. Muller,* 65 Cal. 512, 4 Pac. 531; *Campbell v. Buckman,* 49 Cal. 362; *Dowd v. Clarke,* 51 Cal. 262; *Speegle v. Leese,* 51 Cal. 415; *People v. Forbes,* 51 Cal. 628; *Kennedy v. Berry,* 52 Cal. 87.) To avoid the election, the

misconduct of election judges must be such as to procure a
person to be declared elected when he has not received the
highest number of votes.    (Rev. Stats., sec. 5027; Paine on
Elections, 187-196; McCrary on Elections, 105-510, 600.)
The presumption is in favor of the validity of the election.
(*Commonwealth v. Lee,* Bright. Elect. Cas. 98; *People v. Clark,* 1
Cal. 408.) It is only where the provisions of the election law have
been entirely disregarded by the officers, and their conduct has
been such as to render their returns utterly unworthy of credit,
that the entire poll may be rejected; and even in such case the
votes actually polled must be computed.    (*Littlefield v. Green,*
Bright. Elect. Cas. 493; *Piatt v. People,* 29 Ill. 72; *People v.
Cook,* 8 N. Y. 68, 59 Am. Dec. 451; *Mann v. Cassidy,* 1
Brewst. 60; *Chadwick v. Melvin,* Bright. Elect. Cas. 256.)
Thoughtless interference by outside persons with the election
officers is not ground for setting aside the election.    (*Boileau's
Case,* Bright. Elect. Cas. 268; *Skerrett's Case,* Bright. Elect.
Cas. 320; *Sprague v. Norway,* 31 Cal. 173; *Dale v. Irwin,* 78 Ill.
170.)    Nor do mere irregularities or omissions to observe direc-
tory provisions of law. (*Gilleland v. Schuyler,* 9 Kan. 569;
*Sprague v. Norway,* 31 Cal. 173; *Sudbury v. Stearns,* 21 Pick.
148; *Weeks v. Ellis,* 2 Barb. 320.)

Smith & Smith and John T. Morgan, for Respondent.

Immaterial issues, or those rendered immaterial by the facts
found, need not be found.    (*Estate of Wooten,* 56 Cal. 326;
*Porter v. Woodward,* 57 Cal. 535; *Whiting v. Townsend,* 57
Cal. 519; *McCourtney v. Fortune,* 57 Cal. 617; *Knowles v.
Seale,* 64 Cal. 377, 1 Pac. 159; *Robarts v. Haley,* 65 Cal. 397, 4
Pac. 385.)    There must be a total deficiency in evidence, or such
great preponderance as to show passion or prejudice, to warrant
the setting aside of a verdict or finding.    (*Glenn v. Arnold,* 56
Cal. 631; *People v. Manning,* 48 Cal. 335; *Bensley v. Whipple,*
57 Cal. 267.)    If there is any evidence to support the finding, it
will not be disturbed.    (*Lick v. Madden,* 36 Cal. 213, 95 Am. Dec.
175; *Hill v. Smith,* 32 Cal. 167; *Wilson v. Fitch,* 41 Cal. 363;
*Cox v. Stage Co.,* 1 Idaho, 376; *Trenor v. Railway Co.,* 50 Cal.
222.)

BEATTY, C. J.—At the general election, held in November, 1888, the parties to this action were opposing candidates for the office of sheriff of Bingham county, to which the appellant was declared elected. The respondent in pursuance of our statute for "Contesting Certain Elections," beginning with section 5026, commenced this action of contest, alleging as the grounds thereof: 1. Malconduct of the board of judges of election in Rexburg precinct, in said county; and 2. That illegal votes were cast in said precinct, and counted for appellant. At the trial of the cause, when respondent closed, appellant interposed his motion for nonsuit, which being overruled, he proceeded with the introduction of his testimony. By the judgment of the court the respondent was declared elected to said office, and the appellant here asks its reversal.

All the alleged errors complained of by appellant may be considered under the following subdivisions: 1. That the court erred in overruling his motion for nonsuit because respondent's testimony was insufficient to warrant a judgment in his favor; 2. That the findings do not support the judgment; 3. That the court failed to find on all the issues raised; and 4. That the judgment is not warranted by the facts and the law.

The consideration of these questions has required an examination of perhaps the most voluminous record that has ever been submitted to the review of this court, and it has been found a most onerous duty to comply with the closing suggestion of appellant's brief, in which he "commends it to our careful attention and thorough consideration." We earnestly urge a closer observance of the provisions of our statutes which forbid the incumbering of the record with "redundant and useless matter." Even when an appeal is taken, upon the ground of the insufficiency of the evidence, it is entirely unnecessary to incorporate all that has been said by witnesses, including questions and answers. The statute will protect the appellant who inserts in his record, in narrative form, only such evidence as is pertinent to the material issues, and procures thereto the proper certificate of the judge, showing that all such evidence is included.

Motion for nonsuit, on account of insufficiency of evidence, is waived by the subsequent introduction of testimony by the

mover.   Did the court err in overruling the motion for nonsuit?
The motion, as above stated, was based upon the alleged in-
sufficiency of the evidence.   In the determination of this ques-
tion, examination of the testimony is unnecessary, for any
error the court may have made in this matter was entirely
waived by the subsequent introduction of appellant's testi-
mony.   It is so settled by the highest authority, to which, for
the justification of our ruling, we refer.   (*Bradley v. Poole,*
98 Mass. 179, 93 Am. Dec. 144; *Railway Co. v. Cummings,*
106 U. S. 700, 1 Sup. Ct. Rep. 493; and *Insurance Co. v. Cran-
dal,* 120 U. S. 530, 7 Sup. Ct. Rep. 685.)

Do the findings support the judgment?   The appellant
claims the findings do not justify and support the judgment.
It is admitted they would be more satisfactory if more specific,
but, being "proceedings" under our statute, they must like-
wise be liberally construed.   They are, in effect, that "the
judges of said election in said precinct permitted legal voters
to be arrested, intimidated, and prevented from voting"; "that
they permitted legal voters to be arrested for challenging ille-
gal voters"; "that they permitted a large number of persons,
whom they suspected were illegal voters, to vote without chal-
lenge"; "that they themselves were terrorized by threats of ar-
rest, if they challenged illegal votes"; "that one of the clerks
was violently arrested and taken away because he had chal-
lenged illegal votes"; "that they conducted the election almost
the entire day without any election register"; "that they and
others were intimidated and prevented from challenging any
person offering to vote by armed men who were sent there from
without the precinct by the United States marshal."   Our
statute does not define what constitutes malconduct of the offi-
cers of election, but it must be held that any proceedings which
result in unfair elections, that deprive the qualified elector of
the opportunity of peaceably casting his ballot and having it
counted as cast, or that permit illegal votes to be cast and
counted, are within the statutory provisions.   Section 570 of
our statutes directs that the judges of election must challenge
any person offering to vote whom they know or suspect not to
be qualified; also it is required the "election register" must
be at the polls.   That the judges themselves were intimidated

does not justify such conduct on their part as results in an unfair election. The design of the law is that the election shall be so conducted as to result in the free expression of the legal voters' will. If this fails, from any conduct on the part of the judges, regardless of the cause, the law is not fulfilled. It cannot be doubted, from these findings, that the election was irregular in the highest degree. The findings further show that those irregularities procured the appellant to be declared elected, when he had not received the highest number of legal votes; that illegal votes were cast for him; that, if the illegal votes cast and counted for him were deducted from his total vote, it would leave him with fewer legal votes than respondent had; and upon these findings the court rendered judgment that defendant was elected to the office, and appellant was not, which we think they fully sustain.

Were all necessary findings made? The appellant's next assignment of error is that the court did not find upon all the issues. This question seems for the first time to be suggested in his argument, as the record does not disclose that he asked any additional findings, or excepted to those found as insufficient, or made any objection whatever. It is noted that his objection now is not to a failure to find on all material, but on all, issues raised in the case. By numerous decisions it has been held that findings must be made upon all material issues, but even this ruling is modified in various ways; as that, "when the court fails to find on a material issue, . . . . judgment will not be reversed if the finding must have been adverse to the appellant." (*Hutchings v. Castle,* 48 Cal. 156; *People v. Center,* 66 Cal. 564, 5 Pac. 263, 6 Pac. 481; *California S. R. Co. v. Southern Pac. R. Co.,* 67 Cal. 65, 7 Pac. 123.) Also, if the facts found sustain the judgment, there is no necessity to go further, and find on other issues (*Robarts v. Haley,* 65 Cal. 402, 4 Pac. 385) ; and this court has said: "It must be held that all questions put in issue, and not found upon, would have been found against the appellants, or they were deemed immaterial." (*Gamble v. Dunwell,* 1 Idaho, 271.) However, the question before us is not the establishment of a rule for the formulation of findings, but was it necessary in this case to find others than those in the record? This is solved

by the pleadings themselves. The findings made are almost in the language of the allegations in the complaint, and substantially responsive to all thereof, while the answer simply denies those allegations, and hence raises no additional issue. It is held by numerous authorities that findings which follow the language of the pleadings are sufficient; and, these being responsive to all the material issues tendered by the pleadings, we deem others are unnecessary.

Is the judgment sustained by the evidence? The only remaining question for consideration is whether the testimony is sufficient to justify the decision of the trial court. The reversal of a judgment on this ground must be only upon clear and convincing evidence that the court erred in its conclusion. In *Ainslie v. Printing Co.,* 1 Idaho, 643, it is held that, whenever "there is a substantial conflict in the testimony, it will not disturb the verdict or the decision of the court below." Other courts have gone even further, and by abundant authority it has become the established rule to sustain the conclusion of the trial court, unless it appears it is supported by so little evidence, and contradicted by so much, that it must be inferred it was reached through passion or prejudice. We will briefly consider the testimony concerning, first, the alleged irregularities of the election; and, second, the rejection by the court, as illegal voters, of those persons who claimed to have withdrawn from the Mormon church just prior to the election.

It was claimed in argument that the deputy marshals were there in pursuance of law, and only for the purpose of preserving the peace and purity of the ballot-box. Attention has been directed to the chapter on the "Elective Franchise," commencing with section 2002 of the Revised Statutes of the United States, as containing the authority under which the marshal acted. The only section therein at all relevant provides that "when an election at which representatives or delegates to Congress are to be chosen is held in any city or town of twenty thousand inhabitants or upward, the marshal shall, on application in writing of at least two citizens residing in such city or town, appoint special deputy marshals." No power under this section is given for such appointment, the place not having the necessary population. Section 2023 pro-

vides that, when an arrest is made, "the person so arrested shall forthwith be brought before a commissioner, judge, or court of the United States for examination." Instead of the record showing any compliance with this provision, it appears therefrom that most of the parties arrested were simply held as prisoners until the polls closed, and were then discharged. This being so, the marshals, instead of upholding the law, were, in its name violating the rights of citizens. It is also in testimony that they were armed; that in a threatening manner they dictated how the election should be conducted; that they arrested and carried away those who were peaceably and lawfully challenging those suspected of being illegal voters; that they arrested election officers; that unauthorized persons that day registered illegal voters, who were permitted to vote; that part of the time the necessary election books were not at the polls—all of which is disputed by other witnesses, who further testified that other persons, representing the opposite party, were there with a large number of warrants, with the design of intimidating registered voters by arresting them. From this mass of conflicting testimony the court undertook to sift the truth, and, from the record and statements made in argument, it appears the court concluded the election was attended with such irregularities as to wholly vitiate it, and it set the poll aside. With such a conflict in the testimony it cannot be concluded the court erred, but, on the contrary, the testimony shows the election was a farce. It was a scramble between contending parties, in which the law was ignored. The indulgence of such methods would speedily convert the beneficent power of the ballot into an engine of fraud and lawlessness. The lower court properly treated it as void, and set the returns aside, which is justified by the law as well as the facts. McCrary on Elections, second edition, sections 302, 416, lays down the rule that when there are such irregularities, and disregard of the law, as that the real expression of the legal voters is not had—when the true result cannot be ascertained by the returns—the poll must be set aside; but he adds: "It does not follow that legal votes cast at such poll must be lost. They may be proven by secondary evidence . . . . [the poll being primary], and, when thus proven, may be counted." Other

authorities sustain the view, which we see no reason to condemn. In this case, the court, having treated the election as irregular and invalid, permitted the parties to produce those who had voted, and by inquiring into their qualifications, and how they voted, ascertain the true result. This examination involves one of the questions most complained of by the appellant. A large number of those who had voted for him had been members of the Mormon church, and shortly prior to the election had, in form, severed their connection therewith. Appellant insists this was done in good faith; that they thereby became qualified electors, and, having been registered as such, were entitled to vote; that the court, if it inquired into their qualifications, was bound to so hold, because they were no longer members of that proscribed organization.

There can be no doubt of the court's power, in a case of an election contest, to inquire into the qualification of those who voted, and reject all disqualified. If in this case it found the alleged withdrawal from the church by those parties was a mere form—a pretense to avoid the letter of the law—and that, in faith and practice they still adhered to such organization, it would be justified in rejecting them as legal voters. These persons were before the court, and from their own statements and the facts of the case we may judge them. A very large number withdrew on the same day, and all within about two weeks immediately prior to the day of election. They say this was absolutely without counsel or advice from anyone, and generally without knowledge that others were doing the same. In most of the cases it was done by a written resignation, which each claimed he had written out himself. Yet appellant, in his brief, says these withdrawals were by "notices in writing, and in substantially the following forms." Then follows the form. It is most remarkable that so many persons, at about the same time, but without instructions or concert of any kind, should sever their association with this organization in a form of words so similar that appellant can reproduce what he alleges is substantially the form used. They also testified their reason for leaving the church was their desire to vote, and be endowed with all the privileges of American citizenship; that, while they had, two years prior, been denied the privilege of voting

for the same reason, they had not until shortly before the last election been impressed with the gravity of the situation, and that the desire to change their *status* came upon them rather suddenly. While claiming they had acted in good faith, most of them admitted they still wore their "endowment garments." The general explanation of this was, they would wear them until they wore out, but one explained, "they will wear never out." Should it prove true that they acted in good faith, we will much regret our present doubts. Gladly would we see them in the enjoyment of all the rights accorded to American citizenship, but only through voluntary allegiance to the government, and full obedience to all its laws. In view of all the testimony, we must conclude, with the court below, that those people did not act *bona fide;* that such withdrawals resulted from a concert of action, most likely through the counsel of their leader, and for the sole purpose of evading the law; and that they were not entitled to vote. Even should the evidence in the record justify a reversal, we would be precluded therefrom by another fact contained therein. On page 654 it is certified that testimony, in the form of exhibits, used by the parties at the trial, is not included in the record, and respondent claims it is important. There is no certificate of the judge showing that the omitted testimony is immaterial. Without all the material testimony upon all material issues, it cannot be found the evidence is insufficient to support the decision of the lower court. Its judgment is therefore affirmed.

Berry and Sweet, JJ., concur.