931 P.2d 657

**In the Matter of Termination of the Parental Rights of Jane DOE and John Doe and John Roe. In the Matter of the Adoption of Baby Boy Doe, an Infant.**

**John ROE, Petitioner–Respondent on Appeal,**

**v.**

**John DOE I and Jane Doe I, Respondents–Appellants on Appeal.**

No. 22737.

Court of Appeals of Idaho.

Dec. 31, 1996.

Petition for Review Denied Feb. 28, 1997.

Ellsworth, May, Sudweeks, Stubbs, Ipsen & Perry, Twin Falls, for respondents–appellants on appeal. Bart D. Browning (argued).

Petitioner–respondent on appeal did not participate in the appeal.[1]

LANSING, Judge.

This is an action for termination of the parental rights of the natural father of a young child. As a consequence of certain discovery violations by the natural father, the court imposed sanctions under I.R.C.P. 37(b) and (d) which precluded the natural father from presenting at trial his exhibits and the testimony of several of his witnesses. After a judgment adverse to the natural father was rendered by the magistrate, an appeal challenging the discovery sanctions was taken to the district court. The district court reversed and ordered a new trial. On further appeal to this Court, we affirm the district court's determination that the severity of the discovery sanctions imposed by the magistrate constituted an abuse of discretion in the circumstances presented here.

## FACTS and PROCEEDINGS

On April 16, 1994, John and Jane Doe, a married couple, took physical custody of an infant born on April 13, 1994, with the intent to adopt the child. The unmarried natural mother of the infant signed a voluntary termination of her parental rights on April 21, 1994. Because the natural mother represented that her pregnancy had resulted from a rape by a stranger, the identity of the natural father was unknown to the Does.

The Does initiated adoption proceedings and published notice of those proceedings in a local newspaper. The notice came to the attention of John Roe, who had been residing with the natural mother during the time when the conception occurred. Roe then registered as the putative father of the infant pursuant to I.C. § 16–1513. As a result, on August 4, 1994, the Does filed this action to terminate Roe's parental rights. Soon thereafter, Roe filed a motion for genetic testing, to which the Does stipulated. The results of the test showed a high probability that Roe is the biological father of the child.

The trial was scheduled to begin on May 22, 1995. In late April or early May, Roe changed attorneys, and Harry W. DeHaan became Roe's counsel of record. On April 25, 1995, the Does served Roe with interrogatories and requests for production of documents, and they served a second set of interrogatories on April 28, 1995. These interrogatories and requests sought the production of any exhibits that Roe intended to use at trial and the disclosure of his lay witnesses, expert witnesses, and the facts upon which his experts relied in forming their opinions. By terms of I.R.C.P. 33(a)(2) and 34(b)(2), the responses to these requests were due on May 9, 1995, and May 12, 1995, respectively. Roe, however, did not serve timely responses. On May 18, 1995, the Does filed a motion for sanctions pursuant to I.R.C.P. 37(b) and (d) asking that Roe be precluded from presenting any lay witnesses, expert witnesses or documentary evidence at trial because he had not responded to discovery requests in a timely manner. The next day, Roe served his responses to the interrogatories and requests for production. These responses were apparently complete with the exception that Roe did not state the facts upon which his expert witness relied in forming the opinions to which she would testify.

A hearing on the motion for sanctions was conducted in the magistrate division of the district court on the morning of May 22, the trial date. At the hearing, Roe's attorney

---

1. Respondent, through his counsel, Harry C. DeHaan, submitted an untimely respondent's brief. Because the brief was not filed on or before its due date, the brief was not accepted by the Court and, pursuant to I.A.R. 37, respondent was not permitted to present oral argument.

denied that there had been any intent to withhold information. He asserted that in the month since his appearance as Roe's attorney, he had engaged in "an open file program" of informally exchanging information and that most of the Does' interrogatories had been answered earlier in the deposition of Roe. The magistrate granted the Does' motion and precluded Roe from presenting any evidence beyond his own testimony and his examination of court-appointed witnesses.[2] Roe's counsel urged reconsideration of that decision and suggested, as an alternative, that the trial be rescheduled to allow time for Roe to complete his discovery responses and to permit both parties full opportunity to present their evidence. The court, however, rejected this alternative and adhered to its decision excluding Roe's witnesses and his documentary evidence. The court trial was conducted on May 22 and May 24. Roe's excluded trial witnesses included his parents, his previous attorney, and his expert witness. On June 21, 1995, the trial court issued its memorandum opinion, which served as findings of fact and conclusions of law. *See* I.R.C.P. 52(a). The trial court found that Roe had not visited the child, had not made any payment for the child's support or for the expenses of prenatal care and delivery, and had not otherwise sought to involve himself in the child's life. Based on these findings the trial court concluded that Roe's parental rights should be terminated on the ground of neglect, pursuant to I.C. § 16–2005.

On appeal to the district court, Roe argued that the trial court abused its discretion in excluding his witnesses and other evidence because these sanctions were out of proportion to Roe's discovery violation. Roe also contended that the trial court's finding of parental neglect was not supported by the evidence. The district court held that the discovery sanctions were unduly severe and constituted an abuse of the trial court's discretion. On that basis, the district court reversed and remanded the case for a new trial. Consequently, the district court did not review the remaining issues concerning

2. The court had appointed two counselors who conducted home studies and a guardian ad litem

the sufficiency of the evidence. The Does now appeal from the district court's decision. They argue that the trial court properly exercised its discretion in imposing sanctions for Roe's failure to serve timely discovery responses.

## ANALYSIS

When we review the decision of a magistrate following an intermediate appeal to the district court, we independently examine the proceedings in the magistrate division while giving due consideration, but not deference, to the district court's appellate decision. *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993); *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

A court possesses authority under I.R.C.P. 37(d) to impose sanctions upon a party who fails to serve timely responses to discovery requests. This rule provides in relevant part:

> If a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or ... to serve a written response to a request for inspection submitted under Rule 34 after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Thus, the following orders, *inter alia,* listed in Rule 37(b)(2) and made applicable by reference in Rule 37(d), may be entered for a failure to respond to discovery requests:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

for the child.

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

In addition, Rule 37(a) authorizes the court to issue orders compelling discovery responses and to award against the delinquent party the movant's reasonable expenses, including attorney fees, incurred in obtaining the order.

 The imposition of sanctions for discovery violations is committed to the discretion of the trial court and will not be overturned on appeal absent a manifest abuse of that discretion. *Ashby v. W. Council, Lumber Production and Industrial Workers,* 117 Idaho 684, 686, 791 P.2d 434, 436 (1990); *Southern Idaho Prod. Credit Ass'n (SIPCA) v. Astorquia,* 113 Idaho 526, 746 P.2d 985 (1987); *Devault v. Steven L. Herndon,* 107 Idaho 1, 684 P.2d 978 (1984); *Kleine v. Fred Meyer, Inc.,* 124 Idaho 44, 47, 855 P.2d 881, 884 (Ct.App.1992); *Fish Haven Resort, Inc. v. Arnold,* 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991). In reviewing a discretionary decision we ask: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether the trial court acted within the boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether the trial court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

 There is some question as to whether the first prong of this three-part test—the court's recognition of the issue as one of discretion—is satisfied here. In imposing the sanctions the trial court stated:

[W]hile there may have been a free exchange of information and an open file approach to discovery, this would in no way alleviate the duty to comply with the requirements of the discovery rules. Petitioner was, and is, entitled to have the rules complied with and the court is not at liberty to waive the rules in favor of a free exchange of information.

This statement suggests that the trial court may not have recognized the scope of its discretion and that there were available alternatives to the sanctions requested by the Does. However, in view of the ambiguity of the record with respect to the trial court's perception of the scope of its discretion, we do not rest our decision upon this point but proceed with consideration of the second prong of the *Hedger* test.

Several decisions of the Idaho Supreme Court address the standards that govern the imposition of sanctions for discovery violations. In *Devault v. Steven L. Herndon,* 107 Idaho 1, 684 P.2d 978 (1984), the Supreme Court considered a trial court's dismissal with prejudice of a legal malpractice action for the plaintiff's failure to comply with previously issued discovery orders. In that case, the defendant had filed a motion to compel production of documents that had been requested. The court issued an order compelling production of the documents by a specified deadline. The plaintiff did not comply with this order, and the defendant then filed a motion to exclude evidence covered by the document request. The trial court did not grant this motion for sanctions but, instead, again ordered the plaintiff to provide the requested documents and set a new deadline for production. As a consequence of the plaintiff's non-compliance with the first order, the trial setting had to be vacated. About six weeks after the second deadline, the defendant moved to dismiss the action as a sanction because the plaintiff still had not complied with any of the previous orders. The Supreme Court held that the trial court did not abuse its discretion in dismissing the action as a sanction in this circumstance, where the plaintiff had repeatedly failed to comply with direct orders and where the plaintiff's recalcitrance had resulted in the trial being delayed at least once and would have required a second delay had the dismissal not been granted.

Another relevant case is *Southern Idaho Production Credit Association v. Astorquia,* 113 Idaho 526, 746 P.2d 985 (1987). In that case the defendants filed a counterclaim. Discovery requests directed to the defendants were not answered, and the plaintiff filed a motion to compel responses. Neither the defendants nor their attorney appeared at the hearing on the motion, and the motion was granted with directions that the defendants respond to the discovery requests within twenty days. The defendants did not comply with that discovery order, nor did they appear at depositions that had been scheduled by the plaintiff. The plaintiff then filed a motion for sanctions for the defendants' failure to comply with the first discovery order. The trial court granted part of the requested sanctions, striking the defendants' affirmative defenses and counterclaim. On appeal, the Idaho Supreme Court held that the trial court erred in imposing the drastic remedy of dismissal without first having made specific findings as to whether alternative, lesser sanctions would have been inadequate. Therefore the Court remanded the case for appropriate findings.

Justice Donaldson was prompted to write a concurring opinion in *Astorquia* in which he observed that sanctions serve the dual purposes of encouraging compliance with discovery and punishing misconduct. *Id.* at 531, 746 P.2d at 990 (Donaldson, J., concurring). He opined that a trial court generally should attempt to satisfy the aim of encouragement before applying the more drastic punishment sanction, and he quoted with approval from 8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE 2284, pp. 767–72 (1970) where it is stated:

"... [I]t seems especially fitting that courts should make the punishment fit the crime and should not impose a drastic sanction that will prevent adjudication of a case on its merits except on the clearest showing that this course is required."

*Id.* at 532, 746 P.2d at 991. Justice Donaldson then concluded:

The trial judge must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party in light of the twin aims

of the sanction power. Only after applying this balancing test, the court should impose a sanction which will most substantially lead to the efficient administration of justice.

*Id.*

■ Further guidance regarding discovery sanctions was given by our Supreme Court in *Ashby v. W. Council, Lumber Production and Industrial Workers,* 117 Idaho 684, 791 P.2d 434 (1990). In that case, the plaintiff had repeatedly failed to respond to discovery requests and had disobeyed an order compelling responses, with the consequence that two years after the discovery requests were propounded, they still had not been properly answered. The trial court sanctioned the plaintiffs by dismissing their complaint with prejudice. In reviewing this decision, the Idaho Supreme Court set forth the factors to be considered by a trial court in weighing whether to impose dismissal with prejudice as a sanction for non-compliance with procedural rules:

The two primary factors are a clear record of delay and ineffective lesser sanctions, which must be bolstered by the presence of at least one "aggravating" factor, including: 1) delay resulting from intentional conduct, 2) delay caused by the plaintiff personally, or 3) delay causing prejudice to the defendant.

*Id.* at 686–87, 791 P.2d at 436–37. The Court noted that an award of costs and explicit warnings are among "the appropriate preliminary measures" which the trial court may take to attempt to force compliance before resort to the drastic measure of dismissal. *Id.* at 687, 791 P.2d at 437. The Supreme Court concluded that the trial court in *Ashby* had appropriately applied the foregoing factors before ordering dismissal, and the order was therefore affirmed.

■ The sanctions selected by the trial court here, the exclusion of most of Roe's witnesses and other evidence, did not amount to an entry of judgment against Roe, and therefore *Ashby* does not directly govern. The chosen sanction was, however, a severe one. Precluding a litigant from presenting evidence on crucial issues prevents a thorough examination of the merits at trial and in

many circumstances will be tantamount to ordering judgment against the litigant on those issues. We conclude that, although the *Ashby* test does not apply when the sanction is something less than entry of judgment against the offending party, some balancing of the equities and some consideration of the efficacy of lesser sanctions must precede a trial court's imposition of a sanction which will significantly impair a party's ability to present its case on the merits at trial. Borrowing from Justice Donaldson's concurrence in *Astorquia*, we hold that a trial court, "must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party." *Astorquia*, 113 Idaho at 532, 746 P.2d at 990. Second, a trial court should not impose a sanction that will prevent full adjudication of a case on the merits without having first considered lesser sanctions and having reached a conclusion, supported by the record, that lesser sanctions would be ineffective or inadequate.

The importance of insuring a balance between the culpability of the offending party and the severity of the court's responsive sanction is magnified in the case at bar be- , cause of the vital interest at stake in this litigation. At issue in this case was not a claim for property or damages but a parent's relationship with his biological child. A parent's interest in this relationship, including the interest of an unwed father, is a liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Lehr v. Robertson*, 463 U.S. 248, 256–68, 103 S.Ct. 2985, 2990–97, 77 L.Ed.2d 614 (1983); *Caban v. Mohammed*, 441 U.S. 380, 388–89, 99 S.Ct. 1760, 1765–66, 60 L.Ed.2d 297 (1979); *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211–12, 31 L.Ed.2d 551 (1972); *Petition of Steve B.D.*, 112 Idaho 22, 25, 730 P.2d 942, 945 (1986).[3]

The record before us does not reflect either a balancing of the equities by the trial court nor consideration of the efficacy of lesser sanctions. If such an analysis had been conducted, the record would not support the sanctions imposed here. First, although Roe did not comply with the discovery rules, great culpability cannot be ascribed to him. Roe did not refuse to answer and did not make specious objections to the interrogatories and requests for production. Rather, he served responses that were seven days late as to one set of discovery requests and ten days late as to the other. So far as we can discern from the record, his belated answers were responsive and complete with the exception of the failure to specify the facts which underlay the opinions of his expert witness. There was no prior order to compel responses, and Roe had not engaged in any pattern of delay or disobedience of court orders. The record does not suggest that Roe wilfully sought to avoid discovery. Rather, there had been an informal exchange of information. The magistrate was correct in observing that informal disclosures are not a substitute for formal interrogatory answers, which must be made under oath, but prior informal disclosure does bear upon the level of prejudice to the adversary that may flow from a delay in the formal responses.

Next, there was no showing of any prejudice to the Does that could not have been alleviated by a short postponement of the trial to allow them the time needed to meet whatever information was disclosed in the belated discovery responses. The Does argue on appeal that a postponement would have "punished" them, not Roe, but they offer no explanation as to how a brief postponement would have adversely affected their interests. Moreover, a balancing of the equities requires a consideration of the Does' own conduct. Their action had been pending since September 1994, but with a trial date of May 22, 1995, the Does waited until late April 1995, to propound interrogatories or requests for production of documents. It is

---

**3.** An unwed father must prove more than a biological relationship to establish his interest, however. He must "demonstrate a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child.' " *Lehr*, 463 U.S. at 261, 103 S.Ct. at 2993, *quoting Caban*, 441 U.S. at 392, 99 S.Ct. at 1768. This may be shown by the development of a significant custodial, personal, financial and legal relationship with the child. *Lehr*, 463 U.S. at 262, 103 S.Ct. at 2993–94; *Petition of Steve B.D.*, 112 Idaho at 25, 730 P.2d at 945.

apparent that the Does' own election to serve their discovery requests less than one month before trial caused the time constriction which made Roe's slight delay in responding deleterious to the Does' trial preparation.

Finally, lesser sanctions were not considered by the trial court. Possible alternatives included rescheduling of the trial coupled with an order compelling Roe to complete his discovery responses, an award of costs against Roe for the Does' expenses in bringing the motion, an award of costs for any of the Does' trial preparation expenses that would have to be duplicated upon postponement of the trial, and explicit warnings of more severe sanctions if Roe did not comply. There is no indication in the record that such lesser sanctions would have been ineffective here to secure Roe's completion of discovery responses while protecting the rights of the Does.

Under these circumstances, we conclude that the trial court did not act within the boundaries of its discretion or consistently with applicable legal standards, when it imposed a sanction that effectively deprived Roe of a full opportunity to oppose the evidence against him in an action challenging Roe's right to raise his biological child.

We affirm the decision of the district court, which vacated the judgment of the magistrate court and the magistrate's order for sanctions. This matter is remanded for further proceedings consistent with this opinion. No costs or attorney fees on appeal are awarded.

WALTERS, C.J., and PERRY, J., concur.