20 P.3d 679

John David "Jack" NOBLE,
Contestor–Appellant,

v.

ADA COUNTY ELECTIONS BOARD, J.
David Navarro, Christopher Rich, James
E. Risch, Interested Parties and/or Con-
testee(s)-Respondents.

No. 26820.

Supreme Court of Idaho.
Boise, September 2000 Term.

Nov. 30, 2000.

Rehearing Denied March 16, 2001.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellant. Starr Kelso argued.

Greg H. Bower, Ada County Prosecutor, Boise, for respondent Ada County. Valencia J. Bilyeu argued.

Risch, Goss & Insinger, Boise, for respondent James E. Risch. R. John Insinger argued.

TROUT, Chief Justice.

This is an appeal from the trial court's judgment denying John David "Jack" Noble's (Noble) Motion to Contest an Election brought against the Ada County Elections Board; J. David Navarro, the Ada County Clerk; Christopher Rich; and James E. Risch, Noble's opponent (collectively "Interested Parties"). Noble argues that the district judge erred by granting Noble's Rule 15(b) motion to amend the pleadings to conform to the evidence and then finding that Noble had not met his burden of proof, by excluding a non-disclosed expert's testimony at trial, and finding that absentee voters could register and vote during the twenty-four day registration blackout period prior to the election. Noble also asks this Court to determine whether the prevailing party in an election contest may recover any costs or fees over the $500 cost bond required to be posted by I.C. § 34-2125. The Interested Parties assert that this Court lacks subject matter jurisdiction over the action. For the reasons outlined below, the district judge's decision is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arose out of the District 18 Senate seat Republican primary election held May 23, 2000. The official results of the primary were that candidate Risch received 3,222 votes and candidate Noble received 3,171 votes, a margin of fifty-one votes. On June 12, 2000, Noble filed a Motion and Affidavit in Support of Election Contest (Motion) in district court. A hearing on the Motion was held on August 15–17, 2000.

At the hearing on the Motion, Noble questioned the legality of over 200 ballots cast by certain electors. The bases for challenging the ballots included failure to sign the elector affidavit on the absentee ballot return envelope, failure of the Ada County elections department to date and time stamp absentee ballots, failure of the Ada County elections department to write down the name and address of persons hand delivering absentee ballots, and allowing individuals to register and vote at the absentee polling place during the twenty-four day period prior to the election in violation of I.C. § 34–408. Noble also alleged that other irregularities in the election process resulted in an indeterminate number of additional illegal ballots having been counted. Noble further alleged that the precinct 68 ballot transfer case was stuffed with ballots, since it was not sealed when delivered to the election offices for counting, and that the failure of the county clerk to keep a record of how many ballots from previous elections were taken from a warehouse resulted in illegal ballots being counted.

After presenting his case, Noble moved pursuant to I.R.C.P. 15(b) to amend the pleadings to conform to the evidence. The district judge granted the motion to amend and added to the pleadings claims of malconduct on the part of election judges and illegal votes. Noble then rested his case and the Interested Parties chose not to present any evidence at the hearing.

On August 24, 2000, the trial court issued its Findings of Facts, Conclusions of Law and Order. The district judge found that Noble had only proved that ten illegal votes had been cast and had failed to prove for whom a single one of those illegal votes had been cast. The district judge, therefore, held that Noble had failed to meet his burden of proof and upheld the election results. Noble filed his Notice of Appeal on September 1, 2000. On September 6, 2000, Noble filed an Amended Notice of Appeal.

## II.

### NOBLE'S ELECTION CONTEST WAS TIMELY FILED

I.C. § 34–2124 requires that "[a] candidate wishing to contest a primary election shall file an affidavit with the appropriate court within five (5) days of the completion of the canvass of the election." The Interested Parties assert on appeal that since Noble did not file his election contest within five days of the completion of the canvass performed by the county board of canvassers, this Court lacks jurisdiction to hear the contest. Our resolution of this issue turns on the meaning of "canvass" as used in I.C. § 34–2124.

Idaho Code §§ 34–1205 through –1214 outline the canvassing process for state Senate primary elections. The county board of canvassers must meet within seven days after the primary to canvass the precinct returns within the county. I.C. § 34–1205. After canvassing the election, the members of the county board of canvassers sign a statement containing the number of votes cast by precinct for each candidate and deliver it to the county clerk. I.C. § 34–1206. The clerk prepares an abstract of the returns for each candidate, which the board must then sign. I.C. § 34–1207. The signed abstract for federal, state and district elections is sent, by registered mail, to the secretary of state.

The state board of canvassers must meet within fifteen days of the primary election for the purpose of canvassing the abstracts. I.C. § 34–1211. The state board must execute two signed statements: one, which is delivered to the secretary of state, contains the total number of votes cast for each federal, state, and district candidate by county and legislative district, I.C. § 34–1212; the second, contains the total votes cast for each candidate for federal, state, and district office by districts, counties, and precincts, I.C. § 34–1213. The secretary of state then issues certificates of nomination to the candidates who won their primary election contests. I.C. § 34–1214.

■ Legislative districts may extend beyond the boundaries of a single county. For any legislative district which extends beyond a single county, only the canvass performed by the state board of canvassers constitutes a canvass of the entire election return. Indeed, I.C. § 34–1214, which relates to the

secretary of state's certification of candidates whose names will appear on the general election ballot, refers to the state board's canvass as "the primary election canvass". The canvass of a district election is, therefore, not complete until the state board canvasses the election and it is that date which controls the filing of a timely election contest petition.

■ Because the Interested Parties contend the filing of this election contest was untimely, it was their burden to provide this Court with an appellate record sufficient for our review of this issue. Nowhere in the appellate record is there a reference to the completion date of the state canvass and thus we must assume Noble had at least the maximum number of days provided by the statutes within which to file a timely election challenge.

I.C. § 34–1211 requires the state board of canvassers to "meet within fifteen (15) days after the primary election." I.C. § 34–116 provides the time computation guidelines for I.C. § 34–1211:

> Calendar days shall be used in all computations of time made under the provisions of this act. In computing time for any act to be done before any election, the first day shall be included and the last, or election day, shall be excluded. Sundays, Saturdays and legal holidays shall be included, but if the time for any act to be done shall fall on Sunday, Saturday or a legal holiday, such act shall be done upon the day following such Sunday, Saturday or legal holiday.

Applying this computation method to the facts, the state board of canvassers had until June 7th to complete its canvas.

Noble had five days from the completion of the state canvass to file his affidavit with the district court. Since I.C. § 34–2124 is not part of "this act" referred to in I.C. § 34–116, this Court will use the general computation rules provided by I.R.C.P. 6(a) to determine when Noble had to file. Applying the counting rules of 6(a) to the facts, Noble had until June 14, 2000, to file his contest. Noble's challenge, filed June 12, 2000 will be considered timely.

## III.

## EXLUDING DR. OLSON'S EXPERT TESTIMONY WAS NOT AN ABUSE OF DISCRETION

Noble contends that because no order compelling discovery had been entered against him, sanctions could not be imposed under I.R.C.P. 37(b).

Prior to the hearing in this case, the district judge entered a Scheduling Order and Notice of Trial Setting, requiring that "the parties" complete "[a]ll discovery ... by August 8, 2000." As the district judge observed, "[t]he cut-off date of August 8th was specific and ... clearly applicable to all sides." Noble's refusal to answer the Interested Parties' interrogatories until August 10th, the date his pretrial statement was due, violated the district judge's order to provide discovery by August 8th.

■ Rule 37(b) authorizes the imposition of sanctions when a "party ... fails to obey an order to provide or permit discovery." Once a violation has been found, the imposition of discovery sanctions under Rule 37(b) is committed to the discretion of the trial court, and the ruling will not be overturned on appeal absent an abuse of discretion. *See Ashby v. Western Council, Lumber Prod. and Indus. Workers,* 117 Idaho 684, 686, 791 P.2d 434, 436 (1990). There is no abuse of discretion where the trial court perceives the issue in question as discretionary, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its own decision through an exercise of reason. *See Basic American, Inc. v. Shatila,* 133 Idaho 726, 744, 992 P.2d 175, 193 (1999); *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Noble contends that the district judge failed to act within the applicable legal standards. In Idaho, two general rules guide a trial court in imposing sanctions. The trial court "must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party" and consider whether lesser sanctions

would be effective. *Roe v. Doe,* 129 Idaho 663, 668, 931 P.2d 657, 662 (Ct.App.1996) (quoting *Southern Idaho Prod. Credit Ass'n v. Astorquia,* 113 Idaho 526, 532, 746 P.2d 985, 990 (1987)). A court need only make express findings on these factors when the sanction deprives a party of the opportunity to go forward on the merits of the claim. *See Roe,* 129 Idaho at 667–68, 931 P.2d at 661–62; *see generally Ashby,* 117 Idaho at 686–87, 791 P.2d at 436–37; *Astorquia,* 113 Idaho at 532, 746 P.2d at 991.

■ The exclusion of Dr. Olson's testimony was a lesser sanction imposed to mitigate the prejudice caused by the late disclosure of Dr. Olson as an expert witness. The Interested Parties moved for dismissal of the action, but the district judge found there was no basis for such an extreme sanction. The Interested Parties asked the district judge to strike and not allow Noble to go forward on the issues on which he had failed to provide information. Instead, the district judge allowed Noble to provide the requested information by the end of the day of the hearing—a task Noble had already stated he was able to do—and the only sanction imposed was the exclusion of Dr. Olson's testimony. Noble offered as an alternative lesser sanction a waiver of notice of rebuttal evidence. The district judge still chose to exclude Dr. Olson's testimony because the Interested Parties would not have enough time to find out what his testimony would be and then find an expert to attempt to refute that testimony. Given the severe time restraints imposed by statute in these election contest proceedings, we believe the district judge acted within the applicable legal standards and did not abuse his discretion.

## IV.

### GRANTING A RULE 15(b) MOTION TO AMEND DID NOT MANDATE FINDING IN FAVOR OF NOBLE

■ Noble contends that the trial court's granting of his motion to amend created a presumption that he had met his burden of proof. The proper term, however, is assumption, and it was not justified.

I.R.C.P. Rule 15(b) provides that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment....

The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements. Absent from the rule is any mention of the party's burden of proof, the credibility of witnesses, or the weight of the evidence. Granting Noble's Rule 15(b) motion meant nothing more than that the parties had tried the issues of illegal votes pursuant to I.C. § 34–2101(5) and malconduct by election judges, pursuant to I.C. § 34–2101(1). Noble still had the burden of showing that sufficient illegal votes had been counted, or malconduct committed, to change the result of the election. *See Huffaker v. Edgington,* 30 Idaho 179, 184–85, 163 P. 793, 794 (1917). The district judge's determination that Noble failed to meet his burden of proof, is not inherently inconsistent with granting the Rule 15(b) motion.

## V.

### THE DISTRICT COURT PROPERLY HELD THAT NOBLE DID NOT MEET HIS BURDEN OF PROOF

■ In reviewing a trial court's judgment in an election contest, this Court will not disturb the findings of fact of the lower court where the findings are supported by competent evidence, even if there is substantial conflict in the evidence. *See Nelson v. Big Lost River Irrigation Dist.,* 133 Idaho 139, 142, 983 P.2d 212, 215 (1999). This Court exercises free review over the trial court's conclusions of law. *See Carney v. Heinson,* 133 Idaho 275, 278, 985 P.2d 1137, 1140 (1999).

**A. The district court's finding that Noble did not meet his burden of proof under I.C. § 34–2101(5) is supported by substantial competent evidence.**

■ I.C. § 34–2101(5) allows an election to be contested "[w]hen illegal votes have

been received or legal votes rejected at the polls sufficient to change the result." The party contesting the election must initially prove that the number of illegal votes cast could have changed the result. *See Jaycox v. Varnum,* 39 Idaho 78, 92, 226 P. 285, 289 (1924) ("The rule that the party who is seeking affirmative relief has the burden of proof is one that necessarily underlies all our procedure.... [W]e conclude that the general rule as to burden of proof must apply to election contests."); *Huffaker,* 30 Idaho at 184–85, 163 P. at 794. Since Risch won by fifty-one votes, Noble had to show that at least fifty-one illegal votes had been counted. The district judge found that only the ten absentee ballots where the elector had failed to sign the affidavit were illegal, and should not have been counted.

██ Noble introduced evidence at trial indicating that an undetermined number of unused ballots from prior elections were removed from a warehouse and used to make up for ballot shortfalls. After fifty of the ballots were used, the remaining ballots were returned to the warehouse. Noble claims that because there is no record of how many were taken from the warehouse and how many were returned, some of these ballots could have been cast illegally. The district judge found that Noble had presented no evidence that a single one of these ballots had been improperly cast.

Noble had an expert witness testify that seven absentee ballot return affidavits were signed by someone other than the person who signed the elector's registration application or absentee ballot request. When confronted with additional writing exemplars from one of the electors, Noble's expert admitted that he had made a mistake due to the limited number of exemplars he had reviewed in making his report.

Noble also called an election official to testify that the ballot transfer case from precinct 68 may not have been properly sealed, thus creating the possibility that the case was stuffed with ballots while being transported from the polling place to the place where ballots were counted. The election judge for precinct 68 testified that the case was properly sealed and had not left his possession from the time he left the polling place until he delivered the case for counting.

██ Weighing evidence and determining the credibility of witnesses is properly left to the trial court. On appeal, this Court finds no basis for overturning the district judge's determination that the above evidence failed to show that any illegal votes had been cast.

██ Noble contends that 189 absentee ballots were illegal and should not have been counted because the county clerk's office failed to follow the absentee ballot return procedures found in I.C. § 34–1005, which provides in part as follows:

Upon receipt of an absent elector's ballot the county clerk of the county wherein such elector resides shall verify the authenticity of the affidavit and shall write or stamp upon the envelope containing the same, the date and hour such envelope was received in his office and, if the ballot was delivered in person, the name and address of the person delivering the same.

It was acknowledged by the Clerk of the District Court that 189 of the absentee ballot return envelopes were not stamped with both the date and time of receipt by his office and that none of the envelopes indicating "hand delivery" were marked with the name of the person delivering them. After considering this testimony, the district judge ruled that the procedural errors of the clerk's office could not be used to disenfranchise 189 electors.

The conclusion of the district court is correct. This Court has previously held that "the right of a person having the constitutional qualifications of a voter cannot be impaired, either by the legislature or the malfeasance or misfeasance of a ministerial officer." *Jaycox,* 39 Idaho at 86, 226 P. at 287 (quoting *Earl v. Lewis,* 28 Utah 116, 77 P. 235, 238 (1904)). Although the original statement related to registration requirements, we find it equally applicable in the current context. The votes that Noble urges this Court to declare illegal are the votes of 189 constitutionally qualified electors. These electors took the time to register, request absentee ballots, vote, and then return those ballots. There was no

evidence that any of these ballots were cast after the polls had closed, nor that there was anything improper about the votes themselves. This Court cannot agree with Noble that the intent of the legislature was to disenfranchise these electors.

At trial, Noble presented the registration cards of forty electors who had been allowed to register during the twenty-four days prior to the election. I.C. § 34–408(1) prohibits registration during the twenty-four days prior to the election:

> No elector may register in the office of the county clerk within twenty-four (24) days preceding any election held throughout the county in which he resides for the purpose of voting at such election. This deadline shall also apply to any registrars the county clerk may have appointed.

Noble argues that the forty registration cards were evidence of forty illegal votes being cast. The district court found that the registration cards could be attributed to individuals who did not vote in the primary election; same-day registered at school board elections held on May 16, 2000; same-day registered to vote at their precinct polling places on the day of the primary election; and same-day registered and voted in-house at the absentee polling place. Noble specifically challenges the district judge's ruling that same-day registration at absentee polling places during the twenty-four day period prior to an election is legal.

An exception to I.C. § 34–408 is contained in I.C. § 34–408A, which allows for election day registration. With regard to absentee voters, I.C. § 34–408A provides that "[a]n individual who is eligible to vote may also register, upon providing proof of residence, at the 'absent electors' polling place.'" The statute does not expressly limit registration at the absent electors' polling place to election day.

Since the statute does not clearly state when an elector may register at the absentee elector's polling place, we must turn to the rules of statutory construction. The goal of statutory construction is "to give effect to the intent of the legislature." *State Tax Comm'n v. Haener Bros., Inc.,* 121 Idaho 741, 743, 828 P.2d 304, 306 (1992).

The legislature's purpose in enacting I.C. § 34–408A was "to exempt Idaho from compliance with the National Voter Registration Act of 1993, as provided in section 4(b)(2) of that act." H.B. No. 603, S.L.1994, ch. 67, § 1(5). The exemption found in § 4(b)(2) of the National Voter Registration Act of 1993 is only applicable to states "in which . . . all voters in the State may register to vote at the polling place at the time of voting in a general election for Federal office." Therefore, the language of I.C. § 34–408A must be interpreted to mean that an elector appearing at the absentee electors' polling place may register during the twenty-four days prior to the election, as long as they vote when they register.

Noble also contends that I.C. § 34–1008 requires that all absentee ballots must be delivered to the respective precinct poll judge for opening. Noble presented evidence that twenty-one absentee ballots were not delivered to their precinct poll judges, but were instead added to ballot transfer cases at the Ada County Administrative offices when the cases arrived from the precincts. He claims that these twenty-one ballots constitute illegal votes that were counted.

Any analysis of I.C. § 34–1008 must first begin with I.C. § 34–1007.

> On receipt of such absent elector's ballot or ballots, the officer receiving them shall forthwith inclose the same, unopened in a carrier envelope indorsed with the name and official title of such officer and the words: "absent electors' ballot to be opened only at the polls." He shall hold the same until the delivery of the official ballots to the judges of the election of the precinct in which the elector resides and shall deliver the ballot or ballots to the judges with such official ballots.

I.C. § 34–1007. I.C. § 34–1008 then provides:

> Between the opening and closing of the polls on such election day the judges of election of such precinct shall open the carrier envelope only, announce the absent elector's name, and in the event they find such applicant to be a duly registered

elector of the precinct and that he has not heretofore voted at the election, they shall open the return envelope and remove the ballot envelopes and deposit the same in the proper ballot boxes and cause the absent elector's name to be entered on the poll books the same as though he had been present and voted in person. The ballot envelope shall not be opened until the ballots are counted.

Construing the two sections together, it is apparent that I.C. § 34–1008 requires only absentee ballots received before election day to be delivered to their proper precincts. I.C. § 34–1007 requires that the carrier envelopes be delivered to the proper precinct judge at the same time the official ballots are delivered. Since the official ballots must be delivered before the polls open on election day, *see* I.C. § 34–910, the carrier envelopes must also reach the polls before they open. Under I.C. § 34–1008, the carrier envelopes are then opened at the polls and the absentee ballots added to the precinct's ballot box. These two sections do not discuss the treatment of absentee ballots received at the Ada County offices on election day.

■ The practice of Ada County is to continue delivering absentee ballots received on election day to their respective polling places. The only ballots that are not so delivered are those for outlying precincts such as Melba and those that arrive too late in the day to be delivered to the polls before they close. These late ballots are instead added to the precinct ballot box at the Ada County offices. Ada County does not have the option of establishing an earlier cut-off time for delivery of absentee ballots to its office. *See* I.C. § 34–1005 (requiring that ballots be accepted up until 8:00 p.m., the same time the polls close). Likewise, Ada County cannot require an elector to deliver his absentee ballot to the proper precinct on election day. *See* I.C. § 34–1005 ("The return envelope shall be mailed or delivered to the officer who issued the same"). Thus, it appears that Ada County handled the absentee ballots received on election day in the only feasible way and did not violate the statutory procedures. Thus, the district judge was correct that the twenty-one ballots

added at the Ada County offices do not constitute illegal ballots.

■ Having found no error with the district judge's rulings, we uphold his determination that Noble failed to meet his burden of proof under I.C. § 34–2101(5). Where the margin of victory was fifty-one votes, evidence of ten illegal ballots being counted is insufficient to show that the illegal votes changed the result of the election. Since Noble did not meet his initial burden of proving a sufficient number of illegal votes to change the result, this Court will not address whether Noble also carried the burden of proving for whom the votes were cast.

**B. The district court's finding that Noble did not meet his burden of proof under I.C. § 34–2101(1) is supported by substantial competent evidence.**

■ Noble contends that the district judge erred in holding that he had not met his burden of showing "malconduct, fraud, or corruption on the part of the judges of election in any precinct, township or ward, or of any board of canvassers, or by any member of either board sufficient to change the result." I.C. § 34–2101(1). Noble's evidence of malconduct is the ten illegal votes that were counted; the failure of Ada County election officials to place times stamps, date stamps, or the name and address of the person delivering an absentee ballot on 189 ballot return envelopes; the failure of an Ada County election official to keep track of how many ballots from prior elections were taken from and then returned to a warehouse; the discarding of voter sequence cards; and the changing of poll books after the canvass to ensure that absentee voters received credit for voting in the election. Only the counting of the ten illegal votes and the failure to mark the return envelopes constitute a failure of election officials to follow statutory procedures.

This Court has only addressed the meaning of the term "malconduct" on one occasion. In *Chamberlain v. Woodin*, 2 Idaho 609, 23 P. 177 (1890), this Court was called upon to review the district court's determination that the contestor had been elected sher-

iff of Bingham County. The district court had found that election officials

> permitted legal voters to be arrested, intimidated, and prevented from voting; that they permitted legal voters to be arrested for challenging illegal voters; that they permitted a large number of persons, whom they suspected were illegal voters, to vote without challenge; that they themselves were terrorized by threats of arrest, if they challenged illegal votes; that one of the clerks was violently arrested and taken away because he had challenged illegal votes; that they conducted the election almost the entire day without any election register; that they and others were intimidated and prevented from challenging any person offering to vote by armed men who were sent from without the precinct by the United States marshal.

*Id.* at 645, 23 P. at 178 (quotation marks omitted). In deciding whether the evidence supported the findings of the district court, this Court observed:

> Our statute does not define what constitutes malconduct of the officers of election, but it must be held that any proceedings which result in unfair elections, that deprive the qualified elector of the opportunity of peaceably casting his ballot, and having it counted as cast, or that permit illegal votes to be cast and counted, are within the statutory provisions.

*Id.*

■■■ A showing that election officials failed to follow every election procedure precisely, without more, is insufficient under I.C. § 34–2101(1). Noble's evidence does not demonstrate that the election process was unfair or that the results are contrary to the actual will of the electorate. We, therefore, uphold the district court's finding that Noble failed to meet his burden of proof under I.C. § 34–2101(1).

## VI.

## COSTS AND ATTORNEY FEES

### A. Costs and attorney fees below.

■■■ Noble asks this Court to determine whether the district judge may award costs over $500 and attorney fees to the prevailing parties below. Because the district judge has not yet entered an order relating to costs and attorney fees, the issue is not properly before this Court.

### B. Costs and attorney fees on appeal.

■■■ A successful litigant is generally not entitled to recover attorney fees unless such recovery is provided by statute. *Kidwell & Heiser v. Fenley,* 96 Idaho 534, 534, 531 P.2d 1179, 1179 (1975). The Interested Parties seek attorney fees and costs on appeal under I.C. § 34–2130, I.C. § 12–121, I.R.C.P 11, I.A.R. 11.1, and I.A.R. 41.

■■■ I.C. § 34–2130 states: "The appellant shall file a bond sufficient to cover the cost of appeal of a primary contest." This statute is not a basis for awarding attorney fees to the Interested Parties.

■■■ The general rule is that costs do not include attorney fees unless attorney fees are expressly included in the definition of the term costs. *See* 20 Am.Jur.2d *Costs* § 1 (1995); 20 C.J.S. *Costs* § 125 (1990). The legislature's awareness of this rule is demonstrated by its authorization of awards of costs and attorney fees. *See, e.g.,* I.C. §§ 5–321, 6–101(3)(*o*), 7–610, 9–342, 12–120(5), 16–1620A (all referring to costs and attorney fees). When the legislature has intended that the term costs cover attorney fees, it has so provided. *See, e.g.,* I.C. §§ 18–3302(6), 18–6713(9), 18–7805(a), 25–3405(7), 26–3106(1)(c), 30–3–48(3), 30–3–54(4), 37–1014, 59–1320(4), 67–6626. Therefore, we hold that attorney fees are not appropriately awarded under I.C. § 34–2130.

■■■ Idaho Code § 12–121 authorizes this Court to award reasonable attorney fees to the prevailing party on appeal, not as a matter of right, but only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably, or without foundation. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Noble has raised legitimate issues concerning the district judge's interpretation of the election laws. For this reason, we conclude that

the appeal was not pursued without foundation and that sanctions under I.R.C.P. 11 and I.A.P. 11.1 would not be appropriate. The requests of the Interested Parties for attorney fees are, accordingly, denied.

## VII.

## CONCLUSION

We affirm the district judge's exclusion of Dr. Olson's testimony as a sanction for failing to disclose his identity as a potential witness before the discovery deadline. We affirm the district judge's holding that Noble failed to meet the burden of proof under I.C. §§ 34–2101(1) and (5).

We award costs only to the Interested Parties on appeal.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL, concur.